Richard STALLWORTH,
Plaintiff-Appellee,

v.

Laquita SHULER, both individually and as Superintendent of Schools; Liberty County School Board; and Jerry Johnson, both individually and as Superintendent of Schools, Defendants-Appellants.

No. 84-3488.

United States Court of Appeals,
Eleventh Circuit.

Dec. 11, 1985.

Clinton E. Foster, Panama City, Fla., for defendants-appellants.

Brian Norton, Mary Charlotte McCall, Tallahassee, Fla., for plaintiff-appellee.

Before VANCE and HATCHETT, Circuit Judges, and LYNNE *, District Judge.

VANCE, Circuit Judge:

Richard W. Stallworth, a black male, filed a complaint in the district court for the northern district of Florida under Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. §§ 2000e to 2000e–17) and 42 U.S.C. §§ 1981 and 1983. He alleged and the district court found that the Liberty County (Florida) school board and defendants Laquita "Skeet" Shuler and Jerry Johnson had over a period of years consistently appointed less qualified white persons to administrative positions and principalships for racial reasons. The court awarded Stallworth $44,090.50 in back and front pay under Title VII and

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

compensatory damages of $100,000 under sections 1981 and 1983. The court also awarded $1000 punitive damages against Jerry Johnson, as well as costs and reasonable attorney's fees. Defendants appeal both liability and remedies. We affirm.

## I.

A finding of intentional racial discrimination is a finding of fact and cannot be reversed unless it is clearly erroneous. *Pullman-Standard, A Division of Pullman, Inc. v. Swint,* 456 U.S. 273, 285–90, 102 S.Ct. 1781, 1788–91, 72 L.Ed.2d 66 (1982). We may reverse only when on the entire evidence we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). This standard places a particularly heavy burden on appellants in cases where the "evidence was largely testimonial, and the district court had the advantage of observing the witnesses and evaluating their credibility firsthand." *Lincoln v. Board of Regents,* 697 F.2d 928, 939 (11th Cir.1983), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983).

Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical. *Lincoln,* 697 F.2d at 935 n. 6. A plaintiff asserting either claim must prove intentional discrimination. *Id.* Therefore, we need not discuss plaintiff's Title VII claims separately from his section 1981 and section 1983 claims.

The record discloses direct evidence of a pattern of racial discrimination in promotions in the Liberty County school district. In the usual case, direct evidence of discrimination is lacking and therefore discrimination must be inferred from circumstantial evidence. The *McDonnell Douglas* [1] pattern of shifting presumptions makes that inference possible by eliminating the most common non-discriminatory reasons for defendants' actions. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). Where the evidence for a prima facie case consists, as it does here,

> of direct testimony that defendants acted with a discriminatory motivation, if the trier of fact believes the prima facie evidence the ultimate issue of discrimination is proved; no inference is required. Defendant cannot rebut this type of showing of discrimination simply by articulating or producing evidence of legitimate, non-discriminatory reasons. Once an unconstitutional motive is proved to have been a significant or substantial factor in an employment decision, defendant can rebut only by proving by a preponderance of the evidence that the same decision would have been reached even absent the presence of that factor.

*Lee v. Russell County Board of Education,* 684 F.2d 769, 774 (11th Cir.1982) (footnotes omitted).[2] The following facts before us show both direct testimony and substantial circumstantial evidence to support the district court's finding that plaintiff has proven by a preponderance of the evidence that race was the motivating factor in defendants' failure or refusal to

---

**1.** Under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the plaintiff's prima facie case of discrimination shifts the burden to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802, 93 S.Ct. at 1824. Once the defendant has done so, the presumption of discrimination drops from the case and the plaintiff "must now have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." *Texas Department of Community Af-*

*fairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

**2.** The district court also analyzed the evidence under the *McDonnell Douglas* pattern of shifting presumptions and found that defendant's proffered reasons were pretextual and that discriminatory reasons more likely motivated defendants' actions. The evidence supports the court's findings.

consider plaintiff seriously for any administrative positions.

The record shows that the Liberty County school district remained segregated until 1968. When the district desegregated, the board closed its black school and demoted its black principal to special education teacher and driving instructor. There has never since been a black principal or county-wide administrator in the system. Until late in the period covered by this case the school system used an informal system of appointment, with no advertising or posting of positions, with no formal application procedures and with personnel choices heavily influenced by subjective factors. This court has frequently condemned the use of this type of process as a tool for race discrimination. *See, e.g., Griffin v. Carlin,* 755 F.2d 1516, 1525 (11th Cir.1985); *Miles v. M.N.C. Corp.,* 750 F.2d 867, 871 (11th Cir.1985); *Johnson v. Uncle Ben's, Inc.,* 628 F.2d 419, 426–27 (5th Cir.1980), *vacated on other grounds,* 451 U.S. 902, 101 S.Ct. 1967, 68 L.Ed.2d 290 (1981), *modified and aff'd in part, rev'd in part,* 657 F.2d 750 (5th Cir.1981), *cert. denied,* 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982).

The district court found that Stallworth had taught in the Liberty County school system since 1963; that from 1972 to 1974 he pursued and received a special master's degree in administration through a program meant to alleviate the shortage of trained administrators in the panhandle of Florida; that he was thereafter consistently passed over for promotion to administrative positions in favor of white persons often possessing lower objective qualifications or shorter tenure in the school system; that a former superintendent testified that race was a factor in administrative appointments because of the need for superintendents to face reelection; that defendant Shuler had admitted that race could be a factor in personnel decisions; that when defendant Jerry Johnson became superintendent he lowered job requirements that plaintiff met so that he could appoint to administrative positions three otherwise unqualified whites; that in 1981 Johnson had conducted a sham application procedure for the Liberty High School principalship, having already preselected and solicited a white individual from outside the county for that position.

To counter the evidence of Stallworth's superior objective credentials, defendants consistently claimed that their choices for positions were better qualified for subjective reasons such as the superintendent's trust in them, their political loyalty, and their ability to get along with people. These vague reasons, basically impossible to prove or disprove, cannot be sufficient in themselves to make clearly erroneous the district court's reliance on direct testimony of racial prejudice and evidence of plaintiff's superior credentials. They are another aspect of the suspect subjective selection procedure condemned by this court in cases such as *Griffin, Miles,* and *Uncle Ben's.* The defendants also counter that Stallworth was offered the Liberty High School principalship, but the district court could reasonably believe plaintiff's description of that offer as basically in jest. The district court found pretextual the defense's assertion that Stallworth was not appointed to Liberty High because white teachers would not accept his leadership. He shortly thereafter was elected union president and member of the bargaining team of the teachers' union, ninety percent of whose membership is white. He further found that Shuler's defense that Stallworth was not considered for director of instruction because of a missing letter of reference was pretextual. Defendant Shuler had known Stallworth and his work for sixteen years. She did not inform him of the missing letter until after the appointment had been made.

In sum, the record evidence amply supports the district court's finding that defendants indulged in deliberate racial discrimination in employment.

II.

The district court awarded Stallworth back pay measured by the salary of the Liberty High School principal from June

1977, two years previous to his filing a complaint with the EEOC, to July 1984 when he accepted the adult school principalship. Defendants challenge both the rate at which pay was computed and the time period for which it was to be paid. We find no clear error in either.

■ Defendants claim that the Liberty High School principalship is the highest paid administrative position in the system and since Stallworth could have received a different position it should not serve as the back pay measure. The district court could reasonably believe plaintiff's evidence that until the 1979–80 school year all administrators were paid by the same formula, taking into account education, tenure and a premium for doing an administrative job. Thus, use of the Liberty High salary was proper for the period before 1979 since Stallworth would have received the same pay no matter which job he held. The district court also found that Jerry Johnson's failure to appoint Stallworth principal in 1979 was a discriminatory act, thus making the use of the Liberty High salary proper for 1979 onward.

■ Defendants also attempt to limit the period for which pay should be granted. The district court's finding that there was a continuing violation justifies its award back to the earliest statutory limit. The defendants' attempt to limit front pay by Stallworth's refusal of Shuler's offer of the Liberty High principalship falls before the court's findings that that offer was not seriously made. We therefore find no clear error in the district court's pay award.

■ Defendants argue that the compensatory damage award of $100,000 for the section 1981 and section 1983 violations is unreasonably high. Under *Carey v. Piphus,* 435 U.S. 247, 263–64, 98 S.Ct. 1042, 1052–53, 55 L.Ed.2d 252 (1978), compensable damage may not be presumed but must be proven. The district court here received testimony that Stallworth suffered emotional stress, loss of sleep, marital strain and humiliation because of violation of his civil rights. Defendants countered that

there was no evidence that the plaintiff missed work, consulted any professional help or slipped in his relationships with his students or coworkers. To this Stallworth replied that he was being very careful not to give the school system any ammunition to use against him as an excuse for failure to promote him. Once liability has been found, the district court has a great deal of discretion in deciding the level of damages to be awarded. The injury in civil rights cases may be intangible as here. It need not be financial or physical but may include damages for humiliation and emotional distress. *Carey,* 435 U.S. 247, 263–64 & n. 20, 98 S.Ct. at 1042, 1052–53 & n. 20. Given the seriousness and duration of the violations, we find no clear error in the district court's crediting Stallworth's injury claims. The amount of the award is within the acceptable universe for such injuries under the evidence before us.

■ Punitive damages are of course available under 42 U.S.C. §§ 1981 and 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1628, 75 L.Ed.2d 632 (1983) (section 1983 case); *see also Block v. R.H. Macy & Co.,* 712 F.2d 1241, 1246 (8th Cir. 1983) (same standard for section 1981 claim). The district court here considered defendant Johnson's actions in conducting a sham selection procedure and in having job requirements changed after the fact to be deliberate and knowing actions to violate plaintiff's civil rights. In light of the district court's findings its award of punitive damages was not clearly erroneous. The punitive damage award is thus affirmed.

The amount of attorney's fees has been stipulated. Defendants' only challenge was linked to the challenge of liability. Since we have affirmed the district court's finding of liability, we affirm its award of costs and attorney's fees. We also award attorney's fees for this appeal and remand

to the district court for a determination of the appropriate amount.

The judgment is AFFIRMED and the case is REMANDED for an award of attorney's fees in connection with this appeal.