Mary Ann VANCE, Plaintiff,

v.

**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Defendant.**

No. 86–227–Civ–J–16.

United States District Court,
M.D. Florida,
Jacksonville Division.

Aug. 11, 1987.

Scott Fortune, Jacksonville, Fla., for plaintiff.

Guy O. Farmer, II, Smith & Hulsey, Jacksonville, Fla., and Daniel J. Thompson, Jr., Atlanta, Ga., for defendant.

## ORDER

JOHN H. MOORE, II, District Judge.

This cause is before the Court upon the Defendant's, SOUTHERN BELL TELE-PHONE AND TELEGRAPH COMPANY (Southern Bell), motions for judgment notwithstanding the verdict and for a new trial or to alter or amend the judgment.

Plaintiff, a black woman, commenced this action on March 27, 1986, pursuant to

42 U.S.C. §§ 1981, 1985(3) and 1986, alleging that Southern Bell and numerous other named individuals discriminated against her because of her race and sex. Prior to the jury trial on April 6, 1987, the Plaintiff announced that she would not seek to hold the individual defendants liable. At the end of her case Plaintiff moved to dismiss the counts alleging violations under 42 U.S.C. §§ 1985(3) and 1986. The jury trial proceeded against the Defendant, SOUTHERN BELL, solely on the basis of 42 U.S.C. § 1981. On April 13, 1987, the jury returned its verdict in favor of the Plaintiff and established Plaintiff's damages for past lost wages, future lost wages, mental distress, emotional harm or humiliation, past medical expenses and punitive damages. The Court entered judgment on April 14, 1987, and the Defendant timely filed its motion which is here under consideration.

Considering all of the evidence and reasonable inferences therefrom in the light most favorable to the Plaintiff, as this Court must do, the Court finds that Defendant's motion for judgment notwithstanding the verdict should be granted.

### Findings of Fact

The Plaintiff commenced work for the Defendant approximately in March, 1972. Although the Plaintiff had some attendance problems, she generally had a good record and was considered an acceptable employee of Southern Bell. She had worked in various capacities and at various locations; however, until 1984 she had not worked at the facility where she contends the discrimination occurred. The Plaintiff bid for a job at the Defendant's Western Way facility as a material services coordinator. While such a move was a step up in salary, it was considered a step down in job classification.

Prior to her bid being accepted and her being transferred to the Western Way facility, the Plaintiff never experienced any racial discrimination with Southern Bell, whose work force is made up of approximately 25% minority members. On August 13, 1984, the Plaintiff commenced work at the Western Way facility in the CONECS department under the supervision of Paul Wagner, a first-level supervisor.

One week after she commenced work in the CONECS department, Plaintiff alleges that when she reported to work she found a "noose" hanging from the light fixture above her work bench. In her opinion, this was an act of racial discrimination. At the time of this alleged incident, there were several "imports" working at the Western Way facility. An "import" is an individual who is temporarily assigned at the facility, having come from another of Southern Bell's facilities. The Plaintiff testified that Mr. Oliver, a white co-worker, told one of the "imports" to take the "noose" down. However, contrary to her testimony, one of the witnesses she called, a Mr. Ball, testified that he took the "noose" down on the first occasion. Mr. Ball also was a co-worker. Two days later, approximately August 22, 1984, Plaintiff reported for work and again found the "noose" hanging from the light fixture. This time, she testified, she took the "noose" down and buried it in some trash. Neither she nor anyone else has seen the "noose" since then. She did not report either of these two incidents to anyone.

There is no evidence as to who allegedly hung the noose. At a grievance hearing conducted pursuant to the collective bargaining agreement on January 9, 1985, approximately 4½ months after the alleged noose incidents, the Plaintiff first mentioned the noose to management. At that hearing, Mr. Albert Sellars, the manager of the Western Way warehouse, stated that "Paul probably did it to increase productivity." This statement undisputably referred to Mr. Paul Wagner. Mr. Wagner testified that he made a similar device for the purpose of de-sheathing cable; however, that device was ultimately replaced by a more sophisticated arrangement involving a winch. It is obvious that the remark regarding an increase in productivity related to the fact that Mr. Wagner had made the device; *not* that he hung it over the Plaintiff's workbench.

On September 9, 1984, the Plaintiff received her first transfer and was transferred from the CONECS to the Repair and Returns department under the supervision of Walter Stembridge, another first-level supervisor. During her tenure under Mr. Stembridge, Plaintiff contends that she did not receive adequate training. No evidence was presented to show that anyone else received any more or less training than she did. In fact, evidence was presented that on two occasions outside trainers were called in to train the entire section, including Plaintiff, that Mr. Stembridge personally trained her on at least one occasion, and that Plaintiff was trained by Mr. Williams who was one of the most experienced people in the group.

On September 18, 1984, while Plaintiff was still working in the Repairs and Returns department, Mr. Tommy Lee Sampson, a black manager of Employment and Selections from Southern Bell's main office, contacted the Plaintiff about an allegation that she falsely omitted information about a traffic violation on a transfer application. The Plaintiff was suspended by Mr. Sampson for two days without pay as a result of this omission. Ultimately, Mr. Sampson reduced the disciplinary record to a warning entry, but refused to authorize reimbursement for the two days pay. The Plaintiff alleges that several black employees were disciplined in a similar manner, but that a white employee, Mr. Clyde Oliver, was not treated similarly. Mr. Oliver received a written warning for failing to report a conviction for stealing gasoline when he was 16 years of age. In determining the discipline to be imposed in each instance, Mr. Sampson explained that he took into consideration various matters such as prior infractions, when the subject infraction occurred, and the age of the individuals involved. At the time he was disciplined, Mr. Oliver was in his late 30's and purportedly had an otherwise clean record. At the time the Plaintiff was disciplined, the violation that she falsely omitted from her application was about three years old, and her record at Southern Bell contained other past disciplinary problems.

A grievance hearing concerning the discipline imposed was conducted on October 16, 1984. Both Mr. Sampson and Plaintiff testified at trial that Plaintiff became upset and cried during this meeting. At the conclusion of the hearing, she returned to work in the Repairs and Returns area, whereupon an "altercation" ensued between Plaintiff and Ms. Joyce Foskey Blackwood. Their supervisor, Mr. Stembridge, immediately suspended both women without pay. Ms. Blackwood grieved her suspension, and after investigating the altercation, the company rescinded the suspension and paid Ms. Blackwood her wages. Plaintiff also grieved her suspension, but the company did not grant her grievance.

Plaintiff alleges that this unequal treatment was racially motivated. The evidence, however, was that independent investigations were conducted by Defendant's security department, by the union, and by the supervisor. All three investigations resulted in a finding that Plaintiff struck Ms. Blackwood, and that Ms. Blackwood did not strike Plaintiff. Moreover, Plaintiff testified that she did, in fact, hit Ms. Blackwood.

On November 15, 1984, Plaintiff suffered an "anxiety attack" while at work. Plaintiff alleges that she, or another person, asked Mr. Stembridge to take her to Baptist Hospital, but that Mr. Stembridge instead took her to Memorial Hospital as an act of intentional racial discrimination. The evidence was inconclusive as to whether Mr. Stembridge heard Plaintiff ask to be taken to Baptist Hospital or whether he knew why Plaintiff wanted to go there. Plaintiff and her doctor, Dr. Alexander Rosin, testified that the doctor was to meet her at Baptist, and that Plaintiff had told him of the racial discrimination she had been suffering. About a week before the "anxiety attack," Dr. Rosin sent a letter "To Whom It May Concern" at Southern Bell, stating that Plaintiff told him she was experiencing "undue pressure and harassment on her job," and that "her statements sounded quite legitimate" to him. Again, the evidence was inconclusive as to whether Mr. Stembridge ever received this letter,

or whether Mr. Stembridge knew Dr. Rosin would be at Baptist Hospital.

As a result of Plaintiff's "anxiety attack," she remained out on sick leave, with full pay, from November 15, 1984 until January 10, 1985. On January 9, 1985, Plaintiff and Defendant attended the grievance hearing concerning the discipline Plaintiff received after the altercation with Ms. Blackwood. The union initially requested that Plaintiff be disciplined in the same fashion as Ms. Blackwood. Defendant would not agree to this because the investigations indicated Plaintiff struck Ms. Blackwood. Defendant, however, tried to negotiate a settlement. One offer by Defendant was that Plaintiff's suspension would be reduced to ½ day if Plaintiff would drop her Jacksonville EEOC (JEOC) complaint against Defendant. Plaintiff refused the offer and her discipline remained as initially given.

Plaintiff claims that this attempt to settle her grievance is racial discrimination because the JEOC complaint was unrelated to the grievance hearing and the JEOC complaint contained a charge of racial discrimination. The evidence given at trial, however, was that the attempted settlement was simply for negotiating Plaintiff's grievance. Ms. Nancy Murray, Defendant's staff manager of labor relations, testified that such negotiations are attempted frequently, regardless of what the JEOC complaint is about, and regardless of the person's race. Ms. Murray also testified that the union representative for Plaintiff accepted the proposal concerning Plaintiff, but that Plaintiff would not accept it.

Plaintiff also alleges that Defendant's refusal to transfer her to different sections within the warehouse was the result of racial discrimination. However, Plaintiff produced no evidence that Defendant, in fact, refused to transfer Plaintiff. Plaintiff submitted letters from her doctor requesting a transfer, but she never submitted evidence that she complied with the procedures necessary for transfer under the working agreement with the union. Evidence was given that Defendant transferred other employees without the employ-

ees first complying with the technical procedures. Finally, Mr. Sellars testified that in March, 1985 a position was available in another section, and Defendant transferred Plaintiff before transferring senior people who had submitted transfer requests. This was Plaintiff's second transfer within approximately seven months.

There was testimony regarding other incidents, none of which involved the Plaintiff. In one, a black employee was rebuked by white employees to sit at a different table in the lunch room. She refused, and no further trouble ensued. Another involved the repetition of a racial slur which occurred at a different location approximately three hundred fifty miles away. A first-line supervisor at the Western Way facility was reprimanded for having repeated the story.

### Additional Findings of Fact and Conclusions of Law

On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of motions is proper.... A mere scintilla of evidence is insufficient to present a question for the jury.... There must be a conflict in substantial evidence to create a jury question.

*Neff v. Kehoe,* 708 F.2d 639, 641–42 (11th Cir.1983) (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969)).

Claims of discrimination under § 1981 are analyzed within the framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Smith v. Papp Clinic, P.A.,* 808 F.2d 1449, 1451 (11th Cir.1987). Under this framework, Plaintiff first must present a prima facie case of race discrimination. This is done by showing that Plain-

tiff belongs to a racial minority and that the Defendant treated Plaintiff differently from non-minority employees similarly situated. Once presented, the burden of production shifts to the Defendant "to articulate some legitimate, nondiscriminatory reason" for its employment decisions. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the Defendant does proffer nondiscriminatory reasons for its actions, Plaintiff must prove, by a preponderance of the evidence, that Defendant's proffered reasons are not the real reasons, but are a pretext for discrimination. This burden merges with the ultimate burden of persuading the jury that Plaintiff was "the victim of intentional discrimination." *Smith v. Papp Clinic*, 808 F.2d at 1451.

■ Plaintiff alleged that the discrimination she suffered was in the form of harassment. Therefore, she additionally had to prove that the actions directed toward her were not isolated, trivial, or incidental, but were so numerous as to constitute persistent, widespread customs or practices. Plaintiff had to show that the alleged harassment denied her the same right to make and enforce her contract of employment as was enjoyed by white citizens. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, —— ——, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). Plaintiff also had to prove that the Defendant company knew or should have known of this harassment. *Hamilton v. Rodgers*, 791 F.2d 439 (5th Cir.1986). Plaintiff could have proved this by showing that she complained to higher management of the harassment, or that the harassment was pervasive, thus putting higher management on constructive notice. *Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir.1982).

■ This Court finds that Plaintiff failed to offer proof that the Defendant intentionally discriminated against her because of her race. The evidence, viewed in the light most favorable to Plaintiff, concerning the noose incidents was that a noose was hung over Plaintiff's desk on two different occasions. Two incidents are not enough to establish that the alleged harassment was a persistent, pervasive practice. *Henson*, 682 F.2d at 904; *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417 (7th Cir.1986).

The evidence also showed that Plaintiff's supervisor, Paul Wagner, created a device to de-sheath cable and that that device resembled a noose. Accepting Plaintiff's inference that Mr. Wagner hung the noose over Plaintiff's desk, Plaintiff failed to introduce any evidence that the Company knew of this. Plaintiff testified that she did not immediately report the incident to any other supervisor even though other supervisors were available, and additionally, other supervisors were black. Defendant's procedures for reporting a grievance were adequate to encourage alleged victims of harassment to come forward, even if the alleged harassment was perpetrated by a direct supervisor. Plaintiff's failure to report the incident to any management personnel insulated the Company from liability in this case. *See Meritor*, 106 S.Ct. at 2409. Plaintiff's silence prevented the Company from taking reasonable steps to prevent future harassment or to remedy past harassment.

Plaintiff failed to establish a prima facie case of racial discrimination with respect to her claim that she received inadequate training. Plaintiff did not introduce evidence that Defendant treated her differently from non-minority employees similarly situated.

■ Plaintiff established a prima facie case of racial discrimination with respect to the discipline she received as a result of the false entry on an application; i.e., the omission of a traffic violation. However, Defendant successfully offered legitimate, nondiscriminatory reasons for the discipline. Plaintiff failed to introduce any evidence to prove that these reasons were a pretext for intentional discrimination. Furthermore, Plaintiff failed to explain how the black manager, Mr. Sampson, could racially discriminate against a black employee.

■ Plaintiff also established a prima facie case of racial discrimination with re-

spect to the discipline she received as a result of the altercation she had with Ms. Blackwood. Ms. Blackwood, a white woman, successfully grieved her suspension, but Plaintiff did not successfully grieve hers. Defendant articulated a legitimate, nondiscriminatory reason for the differences in the two women's cases. Defendant offered evidence that investigations resulted in a finding that Plaintiff struck Ms. Blackwood.

Plaintiff attempted to rebut Defendant's proffer of the nondiscriminatory reasons for the harsher discipline by presenting evidence that an altercation between a white man and a white woman resulted in a lesser discipline for them than what Plaintiff received. These people were involved in a "tug-of-war" over a cart. As a result of this altercation, both received warning entries in their records. The testimony concerning the tug-of-war altercation revealed that no one struck any blows, and that most of the employees who witnessed it thought the two people were playing. Moreover, the two people worked different shifts, so they did not have to be suspended immediately in order to "cool off," as was the case with Plaintiff and Ms. Blackwood. Thus, the evidence showed that the two altercations were not similar. Moreover, this evidence did not prove that the reason for Plaintiff's discipline was just a pretext for racial discrimination.

■ The evidence Plaintiff introduced concerning her "anxiety attack" did not establish by a preponderance of the evidence that the Defendant racially discriminated against Plaintiff. This claim of discrimination stems from the fact that her supervisor, Mr. Stembridge, took her to Memorial, and not Baptist, Hospital. As stated earlier, the evidence was inconclusive as to whether Mr. Stembridge heard Plaintiff ask to be taken to Baptist Hospital. Assuming that he did hear her request, Defendant nonetheless offered testimony to legitimately explain the actions of Mr. Stembridge. Mr. Stembridge testified that he took Plaintiff to Memorial Hospital because he believed it was the closer hospital and also because it was the hospital normally used by Defendant for employees.

Plaintiff attempted to rebut this testimony by claiming Mr. Stembridge did not want to take her to see her doctor at Baptist because to do so would verify, for the doctor, her claim of racial discrimination. Plaintiff cites the letter Dr. Rosin sent to Southern Bell as evidence that Mr. Stembridge knew Dr. Rosin was aware of racial discrimination at the warehouse, and thus that Mr. Stembridge desired to avoid the doctor. The inference Plaintiff tried to establish simply is not reasonable. No evidence was introduced to show that Plaintiff ever complained to anyone at Southern Bell of racial discrimination prior to this incident. No evidence was introduced to show that Mr. Stembridge ever saw or read Dr. Rosin's letter. More important, however, is that Dr. Rosin's letter does not mention racial discrimination. The letter stated only that Plaintiff told him about "undue pressure and harassment." This "mere scintilla" of evidence is insufficient to create a conflict in substantial evidence. *Neff v. Kehoe*, 708 F.2d at 642.

■ Plaintiff also failed to create a conflict in substantial evidence on her claim that Defendant racially discriminated against her in its attempt to settle her grievance of her "Blackwood altercation" discipline. This claim revolves around Defendant's offer to reduce Plaintiff's suspension to ½ day if she would drop an unrelated JEOC complaint against Defendant. Defendant offered evidence that negotiations such as this take place frequently, regardless of the party's race or the content of the JEOC complaint. Plaintiff offered no evidence in rebuttal, and therefore, did not sustain her burden of proving intentional discrimination.

■ Finally, Plaintiff failed to establish a prima facie case on her claim that Defendant's refusal to transfer her was the result of racial discrimination. The evidence indisputably showed that Plaintiff did not comply with the technical procedures necessary to effect the transfers she desired. Evidence also was given that Defendant transferred other employees with-

out the employees first complying with the technical procedures. The transferred employees were, like Plaintiff, black but were, unlike Plaintiff, in supervisory positions. A finding of intentional racial discrimination under § 1981 cannot be based on evidence that Defendant failed to treat Plaintiff, a black hourly employee, the same as it treated black supervisory employees.

In considering all of the evidence in the light and with all reasonable inferences most favorable to the Plaintiff, the Court concludes that the facts and inferences are strongly and overwhelmingly in favor of the Defendant. Therefore, the Court believes that reasonable men could not arrive at a verdict for Plaintiff. In addition to the above evidence, other evidence presented at trial indicates that Defendant made every possible concession to Plaintiff. Plaintiff began working at the Western Way facility in August, 1984. After three months, she took a disability leave, with full pay, for two months, until January, 1985. She returned to the warehouse for a month and then took another month off with full pay. In March, 1985, she went back to work at the facility and continued for seven months, or until October, 1985. On October 14, 1985, Plaintiff left the warehouse and, to date, has never returned. She received full pay for three months after leaving, and then received half pay for an additional nine months. From August, 1984 to October, 1986, Plaintiff was physically in the warehouse working for Defendant for a total of eleven (11) months. During that time Plaintiff received, from Defendant, her full salary for seventeen (17) months and half salary for nine (9) months. The Court finds that no conflict in substantial evidence exists and Defendant's motion for judgment notwithstanding the verdict should be granted.

■ In the alternative, were the Court not to grant Defendant's motion for judgment notwithstanding the verdict, Defendant's motion for a new trial should be granted. The relief awarded by the jury to the Plaintiff is contrary to the great weight of the evidence. Moreover, the relief awarded is grossly excessive and is thus indicative of bias, passion, and prejudice so as to shock the conscience of the court. *Jackson v. Magnolia Brokerage Co.*, 742 F.2d 1305 (11th Cir.1984), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985).

The jury awarded Plaintiff $42,000.00 for past lost wages and fringe benefits (back pay). This amount is contrary to the great weight of the evidence. The evidence presented at trial was that Plaintiff's salary was, and would have been, $501.50 a week. Had Plaintiff reported to work from October 15, 1985 (the day she left the Western Way warehouse) to May 1, 1986 (the day Plaintiff and all employees at the Western Way warehouse became employees of BellSouth Services) she would have received her full salary of $15,045.00. The evidence is undisputed that Plaintiff received her full salary for thirteen (13) weeks for a total of $6,519.50 and half-pay for the remaining seventeen (17) weeks, for a total of $4,262.75. Therefore, Plaintiff received $10,782.25 in salary, or just $4,262.75 less than she would have earned had she continued to work at the warehouse. Furthermore, Plaintiff received all of her fringe benefits through October, 1986. The award of $42,000.00 is clearly excessive.

■ Plaintiff also was awarded $500,000.00 for lost wages that she is reasonably certain to incur in the future, or front pay. Front pay is awarded to an individual who was terminated, discharged or constructively discharged and is seeking reinstatement as part of the requested relief. *O'Donnell v. Georgia Osteopathic Hospital, Inc.*, 748 F.2d 1543 (11th Cir.1984). Front pay is appropriate to make a plaintiff whole where the plaintiff seeks reinstatement. This form of relief is used as a short-term alternative. *Nord v. United States Steel Corp.*, 758 F.2d 1462 (11th Cir.1985). In this case, Plaintiff was not discharged, was not constructively discharged, and was not seeking reinstatement. Therefore, front pay is not appropriate.

■ Even assuming that front pay is an appropriate remedy in this case, the

amount awarded to Plaintiff is excessive. Because it is a short-term alternative, front pay is computed on the basis of a few months or years in order to compensate the plaintiff for wages lost between discharge and reinstatement. *See, e.g., Goss v. Exxon Office Systems Co.,* 747 F.2d 885 (3rd Cir.1984) (four months front pay, longer period too speculative); *McDowell v. Mississippi Power and Light,* 641 F.Supp. 424 (S.D.Miss.1986) (front pay for six to twelve months until plaintiff reaches correct level); *Francoeur v. Corroon & Black Co.,* 552 F.Supp. 403 (S.D.N.Y.1982) (front pay for one year in lieu of reinstatement). In the case *sub judice,* the front pay award was computed for Plaintiff's remaining working life, or for twenty-seven (27) years. This award is unreasonable.

Finally, Plaintiff's expert testified that an award of $330,000.00 would make her whole. The jury awarded Plaintiff $500,-000.00. Thus, the award is shown to be excessive even by Plaintiff's standards.

 The jury awarded Plaintiff $500,-000.00 to compensate her for the mental distress, emotional harm, or humiliation she suffered because of the alleged racial discrimination. This award is contrary to the great weight of the evidence. Plaintiff had the burden of proving that the alleged discrimination by the Defendant caused the stress that resulted in her alleged emotional harm or humiliation. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Plaintiff produced evidence that she did suffer from stress; however, the evidence she produced also showed that the majority of the stress she suffered was not created by Defendant. For example, Plaintiff was having trouble with her spouse because he had been named in a paternity suit by another woman. Moreover, Plaintiff had been in an automobile accident, had been having financial problems, had dietary problems, and had suffered with the illnesses and deaths of members of her family. In view of all of the evidence surrounding Plaintiff's non-job related stress, she did not prove with sufficient certainty that the alleged discrimination by Defendant caused her emotional harm. *Stallworth v. Shuler,* 777 F.2d 1431 (11th Cir.1985).

Even if compensatory damages were appropriate in this case, the award of $500,-000.00 is excessive. Plaintiff did not claim, nor did she prove, that any of the alleged emotional harm she suffered resulted in any permanent disability. The evidence showed, in fact, that Plaintiff is fully capable of working and functioning normally. Therefore, the Court concludes that the jury award is the result of bias, passion, or prejudice, and cannot stand. *Rodgers v. Fisher Body Division of General Motors Corp.,* 739 F.2d 1102 (6th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 821 (1985).

 The award of $2,500,000.00 as punitive damages is contrary to the great weight of the evidence and is so grossly excessive as to shock the conscience of the Court. A finding of liability for intentional racial discrimination in a § 1981 action does not automatically entitle the Plaintiff to an award of punitive damages. *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Punitive damages are to be awarded only when the jury finds that the Defendant's conduct was prompted by evil motives or involved reckless or callous indifference in gross disregard of the rights of Plaintiff. The award must be supported by the evidence and cannot be merely a windfall to the Plaintiff. *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

In this case, Plaintiff failed to present any evidence that Defendant had an evil motive or showed reckless or callous indifference in gross disregard of her rights. Plaintiff also failed to show that punitive damages should be imposed to deter Defendant from future discriminatory conduct. The evidence presented to the jury was that almost twenty-five per cent of the Defendant's employees are black. Moreover, the evidence showed that the Defendant imposed discipline against supervisors who used racial slurs in the warehouse, and that the Defendant immediately investigated any alleged discrimination. Therefore, the Court concludes that the award of puni-

tive damages is contrary to the great weight of the evidence.

The Court also concludes that the award of punitive damages is excessive. This conclusion is made after comparing this award with other punitive damage awards in which the defendant was found to have violated § 1981. *See, e.g., Brown v. Freedman Baking Co.,* 810 F.2d 6 (1st Cir.1987) ($50,000.00 for each of three plaintiffs); *Hunter v. Allis–Chalmers Corp.,* 797 F.2d 1417 (7th Cir.1986) ($25,000.00); *Stallworth v. Shuler,* 777 F.2d 1431 (11th Cir.1985) ($1,000.00); *Ramsey v. American Air Filter Co.,* 772 F.2d 1303 (7th Cir.1985) ($150,000.00 reduced to $20,000.00); *Rodgers v. Fisher Body Division of General Motors.,* 739 F.2d 1102 (6th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 821 (1985) (reversed and remanded for new trial because punitive damages of $500,000.00 excessive); *Reeder–Baker v. Lincoln Nat. Corp.,* 649 F.Supp. 647 (N.D.Ind. 1986) ($25,000.00). Thus, a new trial is warranted.

In conclusion, this Court finds that each award of damages in this case is contrary to the great weight of the evidence, and is also grossly excessive. These awards cannot be anything but the result of bias, passion or prejudice on the part of the jury. Were it not for the fact that Defendant's motion for judgment notwithstanding the verdict is being granted, this Court would grant Defendant's motion for a new trial.

Accordingly, the Court now

ORDERS and ADJUDGES:

1. That Defendant's motion for judgment notwithstanding the verdict be and the same is hereby GRANTED.

2. That the judgment entered herein on April 14, 1987 be and the same is hereby VACATED.

3. That the Clerk of the Court is hereby ORDERED to enter judgment for Defendant, SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY.

4. That Plaintiff's motion for sanctions against Defendant, filed herein on June 1, 1987, be and the same is hereby DENIED.

5. That Plaintiff's motion to tax costs, filed herein on June 4, 1987, be and the same is hereby DENIED.

6. That Plaintiff's motion for attorney's fees, filed herein on June 8, 1987, be and the same is hereby DENIED.