**George E. HUGHES, (f/k/a George E. Mancini), Plaintiff,**

v.

**ELECTRONIC DATA SYSTEMS, Defendant.**

**Civ. No. 93–0858–PHX–EHC.**

United States District Court, D. Arizona.

April 17, 1997.

Jaimie McAlister, Meyer Hendricks Victor Osborn & Maledon PA, Phoenix, AZ, Lawrence A. Hammond, Osborn Maledon PA, Phoenix, AZ, James Burr Shields, II, Dale L. States & James Burr Shields II, Phoenix, AZ, for plaintiff.

Lee J. Hutton, Stephen Charles Sutton, Duvin Cahn Barnard & Messerman, Cleveland, OH, Janice Harrison Moore, Moore McCoy & Payne, Phoenix, AZ, for Defendant.

## ORDER

CARROLL, District Judge.

This case was filed in state court and removed to Federal Court based on diversity of the parties.

The complaint alleged three claims for relief against Electronic Data Systems Corp., (EDS): (1) disability discrimination under A.R.S. § 41–1463 based upon Plaintiff's deafness; (2) wrongful discharge in violation of public policy; and (3) intentional infliction of emotional distress.

Defendant's Motion for Summary Judgment was denied as to the first two claims; summary judgment was granted dismissing the claim for intentional infliction of emotional distress.[1]

A jury trial resulted in verdicts in favor of Plaintiff, awarding damages totalling $2,606,000 ($52,965 back pay; $353,035 front pay; $200,000 compensatory damages; and $2,000,000 punitive damages).

EDS filed a post-trial motion pursuant to Fed. Rules Civ. P. 50 and 59, (dkt.113):[2]

---

1. The Summary Judgment Order filed October 11, 1994 (dkt. 55) reviewed the arguments of the parties and relevant factual issues. That general background will not be restated in this Order.

2. Defendant's motion was supported by an extensive legal memorandum and copies of trial exhibits.

... for an order entering judgment in its favor as a matter of law or, in the alternative, granting it a new trial on the issues of liability and damages, or a remittitur of the jury's damage award.

EDS contends that it is:

... entitled to judgment as a matter of law because, even viewing the evidence in a light most favorably to Plaintiff George Hughes, a reasonable trier of fact could only draw one conclusion—EDS did not wrongfully discharge Plaintiff by failing to reasonably accommodate his disability.

EDS also contends:

Alternatively, EDS is entitled to a new trial on Plaintiff's claim of wrongful discharge in violation of Arizona's public policy because the jury's verdict was against the clear weight of the evidence. A new trial is also warranted because the jury's verdict is so excessive in light of the evidence adduced at trial that it alone provides grounds for a new trial on the issues of liability and damages.

In the event a new trial is denied, EDS moved:

... for a remittitur of the jury's damage award because that award is clearly excessive.

Plaintiff responded to the Motion, requesting "that the Court deny EDS' Motion." Plaintiff's "opposition" to Defendant's Motion included an extensive Memorandum of Points and Authorities and record excerpts (dkt. 115). Plaintiff also moved for an award of attorneys' fees as a prevailing party (dkt. 114).[3]

Defendant's Reply Brief discusses the various arguments urged by Plaintiff (dkt.129).

## DISCUSSION

### Preface

The most troubling issue raised by Defendant's Motion is the contention that the jury's "overall damage award was fueled by emotion rather than a dispassionate application of the law to the evidence presented at trial" (dkt. 59 at 13). This argument is fundamentally premised on the compensatory damage award of $200,000 and the punitive damage award of $2,000,000.

For the reasons stated in this Order, the Court concludes that there is merit to Defendant's claims that the jury's awards for compensatory and punitive damages are grossly excessive and unreasonable.

Having arrived at the conclusion expressed in the foregoing paragraph, it is necessary to address a number of issues:

(1) Is EDS entitled to judgment as a matter of law on Plaintiff's claim he was discharged in violation of Arizona·public policy expressed in the Arizona Civil Rights Act, A.R.S. § 41–1463(B)?

(2) Is EDS entitled to a new trial because the jury's verdict is against the clear weight of the evidence?

(3) Is a new trial warranted because the jury's verdicts are grossly excessive and against the great weight of the evidence?

(4) Is EDS entitled to a remittitur?

These issues will be discussed *seriatim.*

## MOTION FOR JUDGMENT AS A MATTER OF LAW ON WRONGFUL DISCHARGE CLAIM

■ The events forming the bases for Plaintiff's discrimination claim are:

... that EDS failed to reasonably accommodate Plaintiff's disability on November 21, 1991 and November 22, 1991 ...

(Reply Brief at 16).

Whatever occurred on November 21 and 22, 1991 essentially involved Plaintiff and his immediate supervisor Jose Cavallero including their exchange of written notes and whatever physical contact occurred.

Cavallero was a relatively new supervisor for Hughes. It is reasonable to infer that on or about November 21, 1991, Hughes had personal problems, that he was frustrated with his job and with his employer's actions in checking up on him when he missed work. Hughes had made efforts prior to November 21 to obtain other employment.

The events on November 21 and 22, as well as the pre-termination proceedings, i.e. investigations by EDS and meetings with Hughes and other involved employees, standing alone, would not support a finding of discrim-

---

**3.** Plaintiff withdrew his claim for attorneys' fees

June 18, 1996 (dkt.137).

ination—lack of accommodation—due to Hughes' hearing disability.

EDS purchased the data processing facilities in 1987 where Hughes worked and he became an employee of EDS through that purchase.[4] At some time, in the spring or summer of 1991, Lee Robinson, Operations Manager for EDS, dealt directly with Hughes concerning work related problems. Robinson instituted requirements that Hughes communicate directly with him about reasons for his absences from work and when he would return to work.

The history of contacts between Robinson and Hughes arguably suggest that on occasions there were communication problems between the parties. It is clear that Hughes never requested any particular accommodations to better communicate with Robinson as his ultimate supervisor at work; it is also clear that EDS did not have a skilled sign language interpreter regularly available at work, nor did it provide a telephone facility ("TDD") to Hughes so that he could "call" in as required by Robinson. The record reflects that Hughes had a "TDD" device available for him to use when calling his place of employment.

As the Court concluded in its Order denying summary judgment on the discrimination claim, resolving the factual disputes involving Hughes and his actions at work was best left for a jury to decide after hearing all of the witnesses and judging their credibility.

The jury found in favor of Plaintiff on the discrimination-failure to accommodate-claim. The jury's responsibility was to do that by a preponderance of the evidence—a tipping of the scales—if you please. In arriving at its verdict the jury had to consider credibility of the witnesses, including the Plaintiff, and resolve conflicts in the evidence.

The arguments EDS advances here were presented to the jury and its verdict on liability reflects the findings of the eight jurors.

The record supporting the jury's verdict on the failure to accommodate issue is not overwhelming; however, viewed in the light most favorable to sustaining the jury's verdict for failure to accommodate, it is sufficient to withstand EDS' Motion for Entry of Judgment notwithstanding the verdict.

Accordingly, the Defendant's Motion for Entry of Judgment notwithstanding the verdict will be denied.

### IS AN AWARD OF PUNITIVE DAMAGES APPROPRIATE?

■ In *Hyatt Regency v. Winston & Strawn*, 184 Ariz. 120, 907 P.2d 506, 518 (Ariz.Ct.App.Div. 1, 1995) the Arizona Court of Appeals reviewed the factors necessary to establish a punitive damage claim:

To recover punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant engaged in aggravated and outrageous conduct with an "evil mind." *Thompson v. Better–Bilt Aluminum Prod. Co.*, 171 Ariz. 550, 556–57, 832 P.2d 203, 209–10 (1992); *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986); *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 331–32, 723 P.2d 675, 680–81 (1986). A defendant acts with the requisite evil mind when he intends to injure or defraud, or deliberately interferes with the rights of others, "consciously disregarding the unjustifiable substantial risk of significant harm to them." *Linthicum*, 150 Ariz. at 331, 723 P.2d at 680; *Gurule v. Illinois Mut. Life & Cas. Co.*, 152 Ariz. 600, 602, 734 P.2d 85, 87 (1987). Important factors to consider when deciding whether a defendant acted with an evil mind include (1) the reprehensibility of defendant's conduct and the severity of the harm likely to result, (2) any harm that has occurred, (3) the duration of the misconduct, (4) the defendant's awareness of the harm or risk of harm, and (5) any concealment of it. *Thompson*, 171 Ariz. at 556, 832 P.2d at 209. The plaintiff

---

4. EDS purchased the Data Processing facilities from Blue Cross. Hughes' mother was an executive with Blue Cross during the time that Hughes was employed by Blue Cross. He first had a summer job and later became a full-time employee after he received a certificate in data process-

ing from the National Institute for the Deaf in Rochester, N.Y. He had the same work assignment with EDS (duties and assignment to the second or third shift) that he had while working for Blue Cross.

may meet the clear and convincing standard by either direct or circumstantial evidence which persuades the jury of the high probability of the defendant's evil mind. *Id.* at 557, 832 P.2d at 210. This court must affirm a jury's award of punitive damages if any reasonable view of the evidence would satisfy the clear and convincing standard. *Id.* at 557–58, 832 P.2d at 210–11; *Rhue v. Dawson,* 173 Ariz. at 232, 841 P.2d at 227.

It is clear, after reviewing plaintiff's activities while employed by EDS and actions taken by his supervisors, that the company neither engaged in any "aggravated or outrageous conduct" concerning Plaintiff nor were any of its actions undertaken with an "evil mind." Plaintiff had the same position with EDS that he had when employed by Blue Cross; he had the same accommodations with respect to his hearing disability by both employers.

At some juncture in 1991, EDS began to monitor Plaintiff's conduct at work, and to require personal contacts when he missed work. EDS did these things in a reasonable manner and for appropriate reasons.

 The Court is persuaded that the punitive damage claims should not have been submitted to the jury. The Court, in conducting a post-trial review of the record concludes the punitive damage award violates Due Process. Further, assuming any such award would be appropriate, the amount of the verdict is grossly excessive. *Id.,* 907 P.2d at 519. *See also, Honda Motor Co. v. Oberg,* 512 U.S. 415, 434–36, 114 S.Ct. 2331, 2342, 129 L.Ed.2d 336 (1994); *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 20, 111 S.Ct. 1032, 1044, 113 L.Ed.2d 1 (1991). *Cf., BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

Plaintiff did not prove by clear and convincing evidence that defendant either engaged in "aggravated and outrageous conduct" or that any of its conduct was undertaken with an "evil mind." In reaching this conclusion the court has considered and evaluated the record in the light most favorable to upholding the jury's verdict, concerning each of the "factors" codified in *Hyatt Regency supra.*

## SHOULD A NEW TRIAL BE GRANTED WITH RESPECT TO COMPENSATORY DAMAGES?

 Juror Interrogatory No. 5, instructed the jury as follows:

State the amount of compensatory damages that Plaintiff has proven by a preponderance of the evidence to be entitled to due to the unlawful termination of his employment. Do not include any damages already included in response to Interrogatory Nos. 3 and 4.

[ANS.] $200,000

Interrogatories Nos. 3 and 4 concerned "Backpay" and "Frontpay."

EDS moves for a new trial with respect to the jury's compensatory damage award of $200,000 which is—as noted—exclusive of front and back pay, arguing that it is excessive and unsupported by the evidence.

Plaintiff responds that the award "is not monstrously excessive and is clearly supported by the evidence."

First, this Court is unaware of any requirement that an award in this context must be "monstrously excessive" before it may be set aside. Second, Plaintiff's Responsive Memorandum, pages 16–18 does not identify evidence or legal authorities that "clearly" establish bases for this award.

Nancy Eldredge, a psychologist, did not, as stated by Plaintiff testify that Plaintiff "sustained considerable trauma" as a result of his termination by EDS. The quoted phrase is counsel's argumentative summary of what Hughes told Dr. Eldredge two weeks before trial. Dr. Eldredge did not make the quoted statement at trial. Tr. February 7, 1995.

More importantly, Dr. Eldredge, while aware that Hughes had two counselling sessions several months after his termination, did not review reports regarding why he was having counselling. (See Exh. 135A). Similarly, she did not pursue any inquiry concerning his August 1991 auto accident; the misstatements to his employer about his ability to return to work after the accident; his later trips to and from Idaho with his then-girlfriend and the impact of her drug problems. Likewise, although aware of the situa-

tion, Dr. Eldredge did not consider Plaintiff's mental stress and/or emotional trauma arising from his relationship with a married woman or her claim that he was the cause of her unplanned pregnancy.

The circumstances in this case are markedly similar to those reviewed by the District Court in *Vance v. Southern Bell Tel. and Tel. Co.*, 672 F.Supp. 1408, 1416 (M.D.Fla.1987):

> The jury awarded Plaintiff $500,000.00 to compensate her for the mental distress, emotional harm, or humiliation she suffered because of the alleged racial discrimination. This award is contrary to the great weight of the evidence. Plaintiff had the burden of proving that the alleged discrimination by the Defendant caused the stress that resulted in her alleged emotional harm or humiliation. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Plaintiff produced evidence that she did suffer from stress; however, the evidence she produced also showed that the majority of the stress she suffered was not created by Defendant. For example, Plaintiff was having trouble with her spouse because he had been named in a paternity suit by another woman. Moreover, Plaintiff had been in an automobile accident, had been having financial problems, had dietary problems, and had suffered with the illnesses and deaths of members of her family. In view of all of the evidence surrounding Plaintiff's non-job related stress, she did not prove with sufficient certainty that the alleged discrimination by Defendant caused her emotional harm. *Stallworth v. Shuler*, 777 F.2d 1431 (11th Cir.1985)
>
> Even if compensatory damages were appropriate in this case, the award of $500,000.00 is excessive. Plaintiff did not claim, nor did she prove, that any of the alleged emotional harm she suffered resulted in any permanent disability. The evidence showed, in fact, that Plaintiff is fully capable of working and functioning normally. Therefore, the Court concludes that the jury award is the result of bias, passion, or prejudice, and cannot stand. *Rodgers v. Fisher Body Division of General Motors Corp.*, 739 F.2d 1102 (6th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 821 (1985).

Hughes, unlike Plaintiff Vance, did not produce substantial evidence that he suffered from any significant mental or emotional stress beginning in mid-November 1991 beyond that which occurred during his teen and adult years because of his inability to communicate with his mother, girl friends and associates at work who were not skilled in the American Sign Language.

Hughes is fully capable and functioning as he did before his termination; he suffers no permanent disability as a result of his termination. In fact, he has a part-time position at a school for the deaf which he finds enjoyable and rewarding. He is capable of performing the duties of that position if it was available full time.

The award of $200,000 is grossly excessive and not supported by the record. To fail to set it aside would merely provide an underserved windfall to Plaintiff.

### JURY ERRED IN CALCULATING PLAINTIFF'S FRONT PAY AWARD—DOUBLE COUNTING

EDS contended in its post-trial motion for relief that the front pay award should be reduced by $52,965 because it compensated Plaintiff twice for that amount of back pay.

Plaintiff, in his opposition memorandum, argued that the jury verdict was correct. See Plaintiff's Memorandum in Opposition at 30–31.

Plaintiff has subsequently agreed that the front pay award should be reduced by $52,965. Accordingly, remittitur will be ordered in this amount, thus reducing the front pay award to $300,070.00.

### SHOULD THE JURY'S DAMAGE AWARD BE OFFSET BY THE SOCIAL SECURITY BENEFITS PLAINTIFF RECEIVED FOLLOWING HIS TERMINATION FROM EDS?

■ Plaintiff commenced receiving some form of Social Security benefits after his termination by EDS. The bases for SSA benefits and the date payments commenced are not a part of the trial record. Plaintiff testified that he was receiving a monthly SSA disability payment of $1,100.

EDS seeks to offset the SSA benefits from any damage award entered by the jury. EDS argues in its post-trial motion (p. 34):

At trial, the Court reserved judgment concerning whether Plaintiff's Social Security disability benefits should be offset against the jury's damage award. If these benefits are offset against Plaintiff's past and future wage losses, then his economic damages are sharply reduced. The award needed to make Plaintiff whole if Social Security disability benefits are added to Plaintiff's interim earnings as an educational aide, is scarcely $3,000.00 per year. Anything more is a windfall.[5]

The arguments at trial about how to handle Social Security benefits centered around whether such benefits should be treated as coming from a "collateral" source and not subject to off-set for that reason.

 The general rule in Arizona is that benefits derived by a Plaintiff from a collateral source are not subject to off-set against a damage award. More to the point, the Arizona appellate court in *Fleming v. Pima County*, 141 Ariz. 149, 685 P.2d 1301, 1307, (1984) ruled that:

We believe that the line of cases which holds that unemployment compensation is a collateral source is the better rule. The policies underlying the unemployment compensation system include 'encouraging employers to provide more stable employment' and providing for 'persons unemployed through no fault of their own.' A.R.S. § 23–601. The [*N.L.R.B. v.*] *Gullet[t] Gin* [*Co.,* 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337] (1951) and *Kauffman* [*v. Sidereal Corporation,* 695 F.2d 343] line of cases supply a rationale which best supports these state policies. This does not give plaintiff a 'windfall.'

Under former A.R.S. § 23–788 (repealed 1981; now see A.R.S. § 23–787) the department of economic security could recover from plaintiff's back pay award the sums it paid out as unemployment compen-

sation. *Arizona Department of Economic Security v. Lidback,* 26 Ariz.App. 143, 546 P.2d 1152 (1976).

We affirm the trial court's determination that the G.I. benefits and unemployment compensation received by plaintiff should not be deducted from his award of back pay.

It is this Court's opinion that the State Courts would follow *Fleming,* and deny the offsetting of Social Security benefits, based on the reasoning that any windfall, if it is such, goes to the benefit of the injured party.

The record in this case does not include any evidence, whether by exhibit or offer of proof, concerning Plaintiff's application for SSA benefits; the Order awarding such benefits, or the date the benefits commenced.[6]

EDS for the first time argues in its motion for post-trial relief, that:

... there is an irreconcilable conflict between Plaintiff's theory for prevailing at trial—namely, that he is 'qualified' and able to work with reasonable accommodations—and his position in applying for and receiving Social Security benefits.... Under these circumstances, other courts have held that an employee is collaterally estopped from claiming damages in a disability discrimination action if he or she is contemporaneously asserting a right to Social Security disability benefits ...

Defendant cites an intermediate Tennessee state court opinion in support of this proposition.

Unfortunately for EDS, and as Plaintiff is quick to point out in his opposition memorandum, p. 28, collateral or judicial estoppel is neither pleaded as an affirmative defense nor supported by evidence of record.

First, Defendant never contended that Plaintiff was totally disabled following his termination. Neither did the Plaintiff. Second, the record is silent concerning the na-

---

**5.** The issue of Social Security benefits off-sets was not raised pretrial.

**6.** All of the cases reviewed by the Court concern an offset (deduction) against a *back* pay award. The Court found no case which off-set unemployment or Social Security benefits against an

award of front pay. Back and front pay awards are discussed in *Nelson v. J.C. Penney Co., Inc.,* 858 F.Supp. 914. However, the *Nelson* Court ruled that "all such payments *heretofore* received from Social Security Disability shall be used to reduce the Defendant's damage obligation." (Emp.supplied). *Id.,* p. 930

ture of Plaintiff's Social Security award, and whether he averred in that proceeding that he was totally or partially disabled from working. *Cf. Lussier v. Runyon,* 50 F.3d 1103 (1st Cir.1995). *See also, Kennedy v. Applause,* 90 F.3d 1477 (9th Cir.1996).[7]

Defendant's motion seeking an offset of Social Security benefits will be denied.

Accordingly:

**IT IS ORDERED** that punitive damages should not be awarded in this case. Further, the Court finds that if such damages are appropriate, $2,000,000 is grossly excessive and unreasonable and that a remittitur in that amount is ordered.

**IT IS FURTHER ORDERED** that compensatory damages of $200,000 are grossly excessive and unreasonable and that a remittitur in the amount of $175,000 is ordered.

**IT IS FURTHER ORDERED** that front pay of $353,035 is excessive and a remittitur in the amount of $52,965 is ordered.

**IT IS FURTHER ORDERED** that Plaintiff will be given the option of accepting the remittiturs ordered by the Court, and if not; a new trial on all claims will be granted by the Court.

**IT IS FURTHER ORDERED** that Plaintiff communicate his decision whether he accepts the remittiturs ordered within thirty days of the date of this Order.

---

**7.** For a thoughtful discussion of estoppel considerations in the context of discrimination cases and the Social Security Act, see an article by Prof. Robert E. Rains, the Federal Lawyer, Vol. 43, No. 10, November/December 1996. *See also Mohamed v. Marriott International, Inc.,* 944 F.Supp. 277 (S.D.N.Y.1996).