**Massoumeh G. NYMAN, Plaintiff,**

v.

**Chairman, FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

**Civil Action No. 92–2711.**

United States District Court, District of Columbia.

May 7, 1997.

James Harold Heller, Richard Salzman, Douglas B. Huron, Heller, Huron, Chertkof, Lerner, Washington, DC, for plaintiff.

John Oliver Birch, Richard Neal Reback, U.S. Attorney's Office, Washington, DC, for defendant.

## AMENDED MEMORANDUM OPINION AND ORDER

URBINA, District Judge.

Denying Defendant's Motion for Judgment as a Matter of Law or, in the alternative, for a New Trial; Granting Defendant's Motion for a Remittitur; Concluding that Plaintiff was not Entitled to a Jury Trial on her Equal Pay Act Claim; Finding for Plaintiff on Her Equal Pay Act Claim; Finding for the Defendant on Plaintiff's 1990 Gender Discrimination Claim; Entering a Remedial Order; and Scheduling a Status/Settlement Conference [1]

---

1. Subsequent to the issuance of this memoran- dum opinion and order the parties entered into

## I. Introduction

This matter comes before the court upon defendant's motion for judgment as a matter of law or, in the alternative, for a new trial. The defendant also moves for a remittitur. There are five issues the court must address. First, the court must determine whether certain of the court's evidentiary rulings warrant the granting of defendant's motion for judgment as a matter of law or, in the alternative. for a new trial. Second, the court must decide whether the evidence introduced at trial is sufficient to sustain a damage award of $300.000. Third, is the issue of whether the plaintiff was entitled to a jury trial on her Equal Pay Act claim. If not, the court must render its findings of fact and conclusions of law as to this claim. Fourth, the court must issue its findings of fact and conclusions of law vis-a-vis plaintiff's 1990 Title VII discrimination claim. Finally, the court will enter a remedial order.

For the reasons more fully discussed below, the court concludes that the challenged evidentiary rulings do not warrant the granting of the defendant's motion. The court further concludes that the damage award cannot stand. Accordingly, plaintiff will have to elect between accepting a remittitur from the $300,000 damage award to $175,000 or having a new trial on the issue of damages. The court further holds that plaintiff was not entitled to a jury trial on her Equal Pay Act claim. Consequently, the jury's verdict as to this claim is only advisory. The court, however, finds for the plaintiff on this claim. As to plaintiff's 1990 discrimination claim, the court finds for the defendant.

## II. Background

Ms. Massoumeh G. Nyman (Ms. Nyman) is a U.S. citizen of Iranian origin. Since 1977 she has worked for the Federal Deposit Insurance Corporation (FDIC). In 1985 she became Chief of the Call Reports Analysis Unit, one of two units in the Bank Financial Reporting Section at the FDIC. Her grade is GG–14. Ms. Nyman's unit is responsible for processing call reports, which are financial statements that thousands of federally insured banks are legally required to file with the FDIC on a quarterly basis. These reports contain information that permit the FDIC to monitor the banks.

The jury in this case entertained four claims. First, Ms. Nyman claimed that beginning in 1992, she was subjected to retaliation after she complained about discrimination in violation of Title VII; second, she claimed that she was paid less than her male counterparts because of her gender in violation of Title VII; third, she claimed that the FDIC violated the Equal Pay Act by denying her equal pay for work that was substantially equal to that of male supervisors; and lastly, Ms. Nyman claimed that she was unlawfully denied a promotion to Section Chief of the Financial Reporting Section, grade 15, in January 1990, in violation of Title VII.

The jury rendered a verdict finding that the FDIC had retaliated against Ms. Nyman in violation of Title VII. Specifically, the jury found that the retaliation included a refusal to upgrade Ms. Nyman's Unit to a Section and to promote her to grade 15. In addition, the jury found that Ms. Nyman was unlawfully refused a merit salary increase and that she was not removed from her supervisor Mr. Michael Hovan's chain of command in retaliation for engaging in protected activity. The jury concluded that the FDIC's discriminatory actions harmed Nyman's health and awarded her $350,000 in compensatory damages.

The jury further found that the FDIC violated the Equal Pay Act by denying Ms. Nyman equal pay for work she performed that was substantially equal to that of male supervisors who served in the Division of Supervision under Mr. Hovan. In addition, the jury found that the FDIC's failure to provide Ms. Nyman with equal pay was not the result of a good faith decision based on a reasonable belief that the FDIC was obeying

a global settlement. As part of the settlement, Ms. Nyman accepted the remittitur. Additionally, part of the settlement entailed the parties agreeing, with the court's consent, to two minor modifications of this memorandum opinion. Consequently, the court is reissuing the modified version of the memorandum opinion.

the law. Finally, the jury rendered an advisory verdict in favor of the FDIC on Ms. Nyman's 1990 sex discrimination claim under Title VII.

The FDIC has moved for judgment as a matter of law or, in the alternative, for a new trial; it has also moved for a remittitur of the jury damage award. The court will address each motion *seriatim*. In addition, the court will render its findings of fact and conclusions of law on Ms. Nyman's Equal Pay Act claim and 1990 sex discrimination claim. Lastly, consistent with the jury's verdict on Ms. Nyman's retaliation claim, the court will enter a remedial order.

### III. Motion for Judgment as a Matter of Law or, in the alternative, for a New Trial [2]

██ Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, a motion for judgment as a matter of law may be renewed if it has been previously denied by the trial court. In considering a motion for judgment as a matter of law, the trial court, viewing the evidence in the light most favorable to the prevailing party, must consider whether "the evidence, together with all inferences that can reasonably be drawn therefrom is so one-sided that reasonable men could not disagree on the verdict." *Carter v. Duncan–Huggins, Ltd.*, 727 F.2d 1225, 1227 (D.C.Cir. 1984); *see also McNeal v. Hi-Lo Powered Scaffolding, Inc.*, 836 F.2d 637, 641 (D.C.Cir. 1988); *Bennett Enterprises, Inc. v. Domino's Pizza. Inc.*, 45 F.3d 493, 497 (D.C.Cir.1995). Moreover, a post-trial motion for judgment as a matter of law may be granted only upon grounds advanced in the pre-verdict motions. *U.S. Indus., Inc. v. Blake Const. Co.*, 671 F.2d 539, 548 (D.C.Cir.1982); *see also Whelan v. Abell*, 48 F.3d 1247, 1251 (D.C.Cir. 1995); *Kutner Buick, Inc. v. American Motors Corp.*, 868 F.2d 614, 617 (3d Cir.1989) (internal citations omitted).

██ A motion for judgment as a matter of law should be denied unless "there can be but one reasonable conclusion drawn from the evidence viewed in the light most favorable to the [plaintiff] ..., giving [her] the advantage of every fair and reasonable inference that the evidence may justify." *Metrocare v. Washington Metropolitan Area Transit Authority*, 679 F.2d 922, 924–25 (D.C.Cir. 1982) (internal citation omitted). A court may neither assess witness credibility nor weigh the evidence. *Mackey v. United States*, 8 F.3d 826, 829 (D.C.Cir.1993) (internal citations omitted). In evaluating the evidence, the court should not decide the motion based on which side it believes has the "better of the case." *Duncan–Huggins, Ltd*, 727 F.2d at 1227 (citing *Bohrer v. Hanes Corp.*, 715 F.2d 213, 218 (5th Cir.1983)). These functions are the domain of the jury. Because the granting of a Rule 50 motion intrudes upon the jury's province, *Duncan–Huggins, Ltd.* 727 F.2d at 1227, Rule 50 motions "should be cautiously and sparingly granted." 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2524, at 541–45 (1971).

██ The FDIC's motion for judgment as a matter of law is not well-founded. The evidence in this case was not so one-sided that a reasonable jury could have only reached one determination: That the FDIC did not retaliate against Ms. Nyman. Ms. Nyman presented substantial evidence of retaliation. The jury heard unrebutted and damaging testimony concerning her supervisor Mr. Hovan's admonition that as a result of Ms. Nyman's complaints of discrimination she was going "to draw blood." In fact, the FDIC admitted that Mr. Hovan told an EEO counselor to advise Ms. Nyman that "if she pushes against a needle, she will draw blood." Testimony was also introduced showing that after Mr. Hovan learned of plaintiff's participation in an EEO hearing, he stated that "he was going to straighten her out." Ms. Nyman presented sufficient evidence to support the jury's finding that Mr. Hovan executed his threats. Specifically, the jury permissibly found that the retaliation included, a refusal to upgrade Ms. Ny-

---

**2.** The FDIC has entitled its motion, "Motion for Judgment Notwithstanding the Verdict or Alternatively for a New Trial." Motions for Judgment Notwithstanding the Verdict no longer exist. Ac-

cordingly, the court will treat the defendant's motion as one brought pursuant to the Federal Rules of Civil Procedure 50 and 59.

man's Unit and to promote her, a refusal to approve a merit salary increase, and a refusal to remove Ms. Nyman from Mr. Hovan's command. The jury also found that this retaliatory conduct harmed Ms. Nyman's health.

Under Rule 59, a "new trial may be granted to all ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States[.]" The standard for a new trial is less onerous than the one applicable to a Rule 50 motion. *Lewis v. Elliott,* 628 F.Supp. 512, 516 (D.D.C.1986). A trial judge should grant a new trial if the verdict is against the weight of the evidence, damages are excessive, for other reasons the trial was not fair, or substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions. 11 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 2805 (1973). A new trial "should be granted only where the court is convinced the jury verdict was a 'seriously erroneous result' and where denial of the motion will result in a 'clear miscarriage of justice.'" *Sedgwick v. Giant Food, Inc.,* 110 F.R.D. 175, 176 (D.D.C.1986). "[T]he standard for granting a new trial is not whether minor evidentiary errors were made but rather whether there was a 'clear miscarriage of justice.'" *Dickerson v. HBO & Co. et al.,* 1995 WL 767177 (D.D.C.) (citing *Sedgwick,* 110 F.R.D. at 176).

Regardless of the way a party characterizes a motion, a post-judgment filing challenging the correctness of the judgment falls within the perimeter of Rule 59(e). *Dove v. Codesco,* 569 F.2d 807, 809 (4th Cir. 1978); 9 Moore's Federal Practice ¶ 204.12[1] at 4–67 (1987). Motions for a new trial "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986) (internal citations omitted). "These motions cannot be used to raise arguments which could, and should, have been

made before the judgment issued." *Id.* Finally, "[i]n deciding whether to grant a new trial, the court should be mindful of the jury's special function in our legal system and hesitate to disturb its finding." *Lewis,* 628 F.Supp. at 516 (internal citations omitted).

The FDIC premises its motion on the grounds that the court impermissibly permitted the admission of evidence that was racially charged. The FDIC also argues that the court erroneously excluded evidence of plaintiff's allegedly poor working relationships with her co-workers, deficient management ability, and her lack of credibility. The FDIC argues that the court should not have permitted Ms. Nyman to introduce evidence concerning Henry Newport's experiences with Michael Hovan.[3] This evidence, the FDIC argues, was inflammatory. The FDIC states that Mr. Newport's testimony concerning Mr. Hovan's remarks and actions toward the former was not relevant; and further, that any probative value such testimony may have possessed was outweighed by the unfair prejudice it sustained.

Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make the fact to be proved more or less likely than if the evidence were not introduced. Rule 401 provides:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The evidence introduced concerning Mr. Hovan's actions vis-a-vis Mr. Newport was relevant evidence offered by Ms. Nyman in an attempt to address a matter at issue in the case: Defendant's defense that Mr. Hovan treated all of his co-workers in the same manner—regardless of race, sex, and irrespective of whether the individual had previously complained about Mr. Hovan's allegedly discriminatory behavior. In fact, the defendant itself presented evidence of

---

**3.** Mr. Newport was Ms. Nyman's first line supervisor. He was supportive of Ms. Nyman and had previously complained about Mr. Hovan's alleg-

edly discriminatory conduct. Mr. Hovan was Ms. Nyman's second line supervisor. He was also Mr. Newport's superior.

Mr. Hovan's consistent yet, according to the defendant, non-discriminatory mistreatment of his subordinates. The challenged evidence was therefore relevant to the issue of whether Mr. Hovan's intemperate behavior was directed toward all his subordinates in a non-discriminatory manner; or whether, on the other hand, he reserved his harsher treatment for those who had previously complained of discrimination. In addition, Mr. Hovan's treatment of Mr. Newport was relevant in that the latter was supportive of Ms. Nyman. As such, Mr. Hovan's treatment of Mr. Newport could have been interpreted by the jury as constituting punishment for Mr. Newport's refusal to join Mr. Hovan's retaliatory conduct towards Ms. Nyman. Accordingly, the court concludes that the challenged evidence was relevant and further, that its probative value was not substantially outweighed by any prejudicial effect it may have had on the FDIC.

■ Similarly, the FDIC's other challenges to the court's evidentiary rulings must be rejected. The FDIC complains about the court's decision to exclude an arbitrator's decision that held that Ms. Nyman engaged in discrimination with respect to three of her subordinates. The court excluded the written decision as hearsay. The FDIC, however, was permitted to introduce evidence that three subordinates of Ms. Nyman were given arbitration awards as a result of conflicts they had with Ms. Nyman.

■ The FDIC also challenges the court's decision to limit the testimony of Ms. Elizabeth Coil, the Chief Steward of the Union that represents FDIC employees. The court limited Ms. Coll's elaboration relating to nine grievances that employees had filed against Ms. Nyman. Ms. Coil, however, was given an adequate opportunity to testify about these grievances. In addition, Mr. Murray Hines' grievance was fully developed

at trial by the FDIC.[4] Moreover, the court did not prohibit the FDIC from calling Ms. Nyman's subordinates as witnesses. The FDIC, however, chose not to do so.

The FDIC further asserts that the court's decision to exclude a memorandum from Ms. Coll to Mr. Hovan regarding the Murray Hines incident was in error, as was the court's decision to exclude a prior performance evaluation of Ms. Nyman. The court disagrees. These items were excluded pursuant to an agreement that had been previously reached by the FDIC and Ms. Nyman regarding the matter. Accordingly, the FDIC's Rule 59 motion for a new trial is denied.

## IV. Remittitur

■ The jury in this case awarded Ms. Nyman $350,000 in compensatory damages. The amount of compensatory damages that Ms. Nyman could recover in this case is, however, limited by 42 U.S.C. Section 1981a (b)(3)(D) to a maximum of $300,000.[5] The FDIC submits that even that figure is excessive and that a further reduction is appropriate. Specifically, the FDIC moves this court to reduce the jury award to $50,000.

■ It is impossible to accurately assess the quantum of suffering sustained by a victim of retaliation. Such assessments are by their nature subjective and arbitrary. As the Second Circuit eloquently stated:

[W]e must recognize that compensation for suffering can be accomplished only in a symbolic and arbitrary fashion. There are at least two serious shortcomings to the endeavor. First, money awards do not make one whole; they do not alleviate pain. Second, there is no rational scale that justifies the award of any particular amount, as opposed to some very different amount, in compensation for a particular quantum of pain.

A plaintiff, however, may not recover punitive damages in cases where the defendant is a government agency. 42 U.S.C. Section 1981a(b)(1). In addition, plaintiff is not entitled to back pay nor front pay, nor any other type of relief authorized by 42 U.S.C. Section 2000e-5 (g).

---

4. As such, defendant's challenge to the court's decision to redact limited portions of the grievance cannot be credited by the court.

5. Section 1981a (b)(3)(D) provides that the maximum amount of compensatory damages that a plaintiff may recover in a case involving a defendant that employs more than 500 individuals is $300,000. The FDIC is subject to this provision.

*Consorti v. Armstrong World Industries, Inc.,* 72 F.3d 1003, 1009 (2nd Cir.1995). There are, however, certain principles that the judiciary has developed to evaluate damage awards. Thus, "[i]n reviewing the amount of the jury's award, [the court] ... need not—and indeed cannot—reconstruct the precise mathematical formula that the jury adopted. Nor need [the court] explore every possible quantitative analysis or compute the basis of each penny and dollar amount. [The court's] inquiry ends once [it is] satisfied that the award is within a reasonable range and that the jury did not engage in speculation or other improper activity." *Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1239–40 (D.C.Cir.1984). Compensable damage must, however, be proven and cannot be presumed. *Carey v. Piphus,* 435 U.S. 247, 263–64, 98 S.Ct. 1042, 1052–53, 55 L.Ed.2d 252 (1978). The injury in civil rights cases may be intangible as in this case. It need not be financial or physical but may include damages for humiliation and emotional distress. *Id.* at 263–64 & n. 20, 98 S.Ct. at 1052–53 & n. 20.

In *Jeffries v. Potomac Dev. Corp.,* 822 F.2d 87 (D.C.Cir.1987), the D.C. Circuit set out two tests for determining whether a jury verdict is so excessive as to warrant the remedy of remittitur: (1) "whether the verdict is 'beyond all reason; or ... is so great at to shock the conscience;'" or (2) "whether the verdict 'is so inordinately large as to obviously exceed the maximum limit of a reasonable range within which the jury may properly operate.'" *Id.* at 96. The burden of establishing that the jury award is so excessive as to warrant a remittitur rests with the FDIC. *Carter,* 727 F.2d at 1240.

 In this circuit, a court may remit a jury verdict only if the reduction "permit[s] recovery of the highest amount the jury tolerably could have awarded." *Carter v. District of Columbia,* 795 F.2d 116, 135 n. 13

(D.C.Cir.1986). A court must be hesitant to disturb a jury's determination of damages in cases involving intangible and non-economic damages. *Ruiz v. Gonzalez Caraballo,* 929 F.2d 31, 34 (1st Cir.1991).

The court's independent research establishes that in discrimination and retaliation cases the range of jury awards is generally between $10,000 and $150,000. *See* Appendix, *infra* at 28–34. The court is aware that Title VII cases are fact-specific and that comparisons between cases are difficult to make. *Nairn v. National R.R. Passenger Corp.,* 837 F.2d 565, 568 (2d Cir.1988). Moreover, the court recognizes that other decisions are merely instructive and not binding. *Martell v. Boardwalk Enterprises, Inc.,* 748 F.2d 740, 750 (2d Cir.1984). Thus, in arriving at a figure the court should rely primarily upon the evidence introduced at trial. *Hurley v. Atlantic City Police Dept.,* 933 F.Supp. 396, 425 (D.N.J.1996). Comparisons, however, are useful in helping the court determine whether or not a given damage award falls within a permissible range. *See Hunter v. Allis–Chalmers Corp., Engine Div.,* 797 F.2d 1417, 1425 (7th Cir.1986); *In re Innovative Construction Systems, Inc.,* 793 F.2d 875, 887 n. 11 (7th Cir.1986); *Johnson v. Hale,* 13 F.3d 1351, 1353 & n. 3 (9th Cir.1994); *Abrams v. Lightolier,* 841 F.Supp. 584, 593 (D.N.J.1994), *aff'd,* 50 F.3d 1204 (3d Cir.1995); *Hurley v. Atlantic City Police Dept.,* 933 F.Supp. 396 (D.N.J.1996).

After careful deliberation. the court concludes that the jury's award cannot stand in its current amount. In reaching this determination, the court considered several factors. First, the court has relied foremost on the evidence introduced at trial. Second, to establish a point of reference, the court has referred to the cases cited in the Appendix. All these cases involved non-economic intangible damages, as does this case.[6] Third, the

---

6. In evaluating the possibility that adding a damages remedy to Title VII would result in disproportionate jury awards, Congress similarly made reference to damage awards in discrimination cases. Specific reference was made to a study conducted by the law firm Shea & Gardner, which found that in Section 1981 cases decided between 1980 and 1990, juries awarded damages in only 69 of 594 cases. H.R.Rep. No. 102–40 at

72 (1991), *reprinted in* U.S.Code Cong. & Admin. News at 610 (citing Shea & Gardner, "Analysis of Damage Awards Under Section 1981" (January 23, 1991)). In two-thirds of the 69 cases the total damage award was $50,000 or less, and in only four instances did the award exceed $200,-000. *Id.*

court has given due regard to Congress' view that plaintiffs should be able to recover compensatory damages under Title VII so that plaintiffs would be appropriately compensated and to provide for more effective deterrence of unlawful behavior on the part of employers.[7] Fourth, the court recognizes that in this case a $300,000 statutory cap applies. In this court's view, the maximum amount recoverable under the applicable cap, therefore, should be reserved for the most egregious cases of unlawful conduct. Fifth, the court has considered the physical harm Ms. Nyman sustained as a result of the defendant's actions. *See Spence v. Board of Education of the Christina School District*, 806 F.2d 1198, 1201 (3d Cir.1986). Sixth, the court has considered Ms. Nyman's evidence of medical treatment. *Id.* Seventh, the court has noted the evidence presented by the FDIC. Finally, the court has given due deference to the jury's belief that, in this case, a large award is warranted. *See Hurley*, 933 F.Supp. at 425.

The following is a review of the evidence presented at trial. Ms. Nyman did not lose her employment as a result of the FDIC's retaliatory conduct. Moreover, the challenged award arises exclusively from the successful retaliation claim. The award is compensation for only non-economic intangible injuries sustained by Ms. Nyman. As to her claim of retaliation, however, the FDIC did not seriously attempt to rebut Ms. Nyman's extensive evidence of retaliation. See discussion, *supra* Section III, A at 4–5. Moreover,

Ms. Nyman presented substantial evidence of the harmful effect that this unlawful conduct had on her health. Specifically, Ms. Nyman provided expert testimony which established that she developed hypertension as a result of the stress that the FDIC's conduct inflicted upon her. She was forced to cease working for a substantial period of time as a result of her medical condition. She is now required to take medication. In addition, Ms. Nyman introduced evidence which showed that she had endured several episodes in which her blood pressure reached dangerous levels. Furthermore, she introduced evidence showing that her life expectancy has been diminished as a result of the FDIC's actions. Consequently, Ms. Nyman successfully established that there was a causal relation between the defendant's actions and the physical symptoms she endured. Additionally, Ms. Nyman presented evidence of the humiliation she suffered as a result of Mr. Hovan's actions, which the jury found, were in retaliation for her discrimination complaints.

After carefully evaluating all the factors outlined above and noting the severe and uncontroverted consequences that the FDIC's actions had on Ms. Nyman; but yet recognizing that Ms. Nyman's injuries do not warrant the highest recoverable damage award under Title VII, it is the court's conclusion that under the law, the maximum amount the jury could have reasonable awarded Ms. Nyman is $175,000.[8]

---

In was Congress' intention that under Title VII, compensatory damages be awarded using the same standards that have been applied under Section 1981. *Id.* at 28–29, *reprinted in* U.S.Code Cong. & Admin. News at 719–22.

7. *See* Section 3 of Pub.L. 102–166, which states that one of the purposes of the 1991 amendments is "to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace."

The purpose of the 1991 amendments is to compensate victims of intentional discrimination and "to provide more effective deterrence." H.R. 1, 102nd Cong. § 2(b)(2) (1991).

"Monetary damages ... are necessary to make discrimination victims whole for the terrible injury to their careers, to their mental and emotional health, and to their self-respect and dignity. Such relief is also necessary to enforce the statute. Monetary damages simply raise the cost of

an employer's engaging in intentional discrimination, thereby providing employers with additional incentives to prevent intentional discrimination in the workplace before it happens." H.R.Rep. No. 102–40 at 64–65 (1991), *reprinted in* U.S.Code & Admin. News at 603.

8. Ms. Nyman's reliance on *Jeffries* is misplaced. That case was not a discrimination or retaliation lawsuit. In that negligence case, the D.C. Circuit upheld a $400,000 jury award. The evidence presented in that case, however, established, *inter alia*, that the plaintiff "suffered a severe injury to his shoulder, resulting in a thirty-five percent permanent partial impairment of the shoulder joint; that [plaintiff] would require further surgery; and that the injuries cause [plaintiff] constant pain and discomfort." 822 F.2d at 96. These permanent physical injuries are significantly greater than those sustained by Ms. Nyman.

▮▮ A district court that finds a verdict amount to be excessive does not, however, have the power to simply reduce the damage award. *Tingley Systems, Inc. v. Norse Systems, Inc.*, 49 F.3d 93, 96 (2nd Cir.1995); *see also Vasbinder v. Scott*, 976 F.2d 118, 122 (2d Cir.1992); *Phelan v. Local 305*, 973 F.2d 1050, 1064 (2d Cir.1992), *cert. denied.* 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993); *Spence v. Board of Education*, 806 F.2d 1198, 1201 (3d Cir.1986). The court can order a new trial limited to the issue of damages. *Tingley Systems*, 49 F.3d at 96. In the alternative, the court may grant the motion for a remittitur by conditioning the denial of a motion for a new trial on the plaintiff's acceptance of the reduced damage award. *Id.* Remittitur is therefore "the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir.1984). Accordingly, Ms. Nyman will be afforded 45 days from the date of this memorandum opinion and order to inform the court and the FDIC, in writing, of her decision.

## III. Equal Pay Act Claim

The Equal Pay Act of 1963, 29 U.S.C. § 206(d), which is part of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.*, prohibits discrimination in rates of pay paid to employees on the basis of gender.

The purpose of the Act is to ensure that employees of both sexes are paid equally for the same job. Specifically the Act provides:

No employer having employees ... shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C. § 206(d)(1) (1978).

### A. Entitlement to Jury Trial

▮▮ The jury found that the FDIC violated the Equal Pay Act because it denied Ms. Nyman equal pay for work that was substantially equal to that of male supervisors. The jury also found that the FDIC's failure to provide Ms. Nyman with equal pay was not the product of a good faith decision based on a reasonable belief that the agency was obeying the law. The FDIC asserts that the jury's verdict on this claim is only advisory because there is no entitlement to a jury trial with respect to Equal Pay Act claims. In addition, the FDIC contends that even if binding, the jury's verdict as to this claim is incorrect.[9] The issue presented, whether a plaintiff pursuing an Equal Pay Act claim

---

9. The FDIC further argues that the verdict is inconsistent with the jury's finding under Title VII that Ms. Nyman was not paid less than male supervisors because of her gender. "It is the duty of the district court to attempt to harmonize the jury's answers[.]" 9A Wright and Miller, *Federal Practice and Procedure*, § 2510 at 200–01. Moreover, the FDIC's failure to bring the alleged inconsistency to the court's attention before the jury was discharged constitutes a waiver of that argument unless the verdict is inconsistent on its face. *U.S. Football League v. National Football League*, 842 F.2d 1335, 1357 (2nd Cir. 1988); *Strauss v. Stratojac Corp.*, 810 F.2d 679, 682–83 (7th Cir.1987); *Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.*, 791 F.2d 1416, 1423 (10th Cir.1986); *Fernandez v. Chardon*, 681 F.2d 42, 58 (1st Cir.1982), *aff'd*, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983); *Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529, 534–35 (5th Cir.1974).

There is, however, no inconsistency since the "allocation of the burdens of proof for claims brought under Title VII and the Equal Pay Act differ significantly." *Brinkley–Obu v. Hughes Training, Inc.*, 36 F.3d 336, 344 (4th Cir.1994). Specifically, Title VII requires proof of intentional discrimination; the Equal Pay Act does not. Under the Act, it was sufficient for Ms. Nyman to establish that her work was substantially equal to that of one higher paid male. She did not have to establish an intent to discriminate—something she did have to establish under Title VII. *Strecker v. Grand Forks County Social Service Board*, 640 F.2d 96, 99 n. 1 (8th Cir.1980) (en banc); *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th cir.1986); *Brinkley–Obu*, 36 F.3d at 344 n. 15. Consequently, "[d]ue to the different allocation of burdens, a plaintiff may succeed on an Equal Pay Act claim and fail to establish a Title VII claim." *Brinkley–Obu*, 36 F.3d at 344 n. 17; *see also Fallon v. Illinois*, 882 F.2d 1206, 1217 (7th Cir.1989); *Brewster v. Barnes*, 788 F.2d 985, 991–92 (4th Cir.1986).

against a government agency is entitled to a jury trial, is an important issue of first impression in this jurisdiction.

 After considering the applicable statutory and decisional law, the court concludes that Ms. Nyman was not entitled to a jury trial on her Equal Pay Act claim. The constitutional basis for a jury trial, the Seventh Amendment, does not apply in actions against the federal government. *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). Consequently, there is no general right to a trial by jury in actions against the federal government. *Id.* at 160, 101 S.Ct. at 2701. "Thus, the right to a jury trial in suits against the government exists only pursuant to congressional mandate." *Young v. U.S. Postal Service*, 698 F.Supp. 1139, 1140 (S.D.N.Y.1988). In *Lehman*, the U.S. Supreme Court held that "the plaintiff in an action against the United States has a right to a jury trial only where affirmatively and unambiguously granted that right by statute." *Id.* at 161, 101 S.Ct. at 2701–02. The Court further stated that "a jury trial right [must] be clearly provided in the legislation creating the cause of action." *Id.* at 162 n. 9, 101 S.Ct. at 2702 n. 9; *see also Marcella v. Brandywine Hosp.*, 47 F.3d 618, 621 (3rd Cir.1995) (stating that "[i]t is clear that the federal government itself is not subject to trial by jury unless it specifically consents.") (internal citation omitted); *In re Young*, 869 F.2d 158, 159 (2nd Cir.1989) (holding that since the Postal Reorganization Act did not contain express language "affir-

matively and unambiguously" granting a jury trial against the postal service, there was no jury trial available against the Postal Service); *Washington Int'l Ins. Co. v. United States*, 863 F.2d 877, 878–879 (Fed.Cir.1988) (citing *Lehman* when stating that in an action in the Court of International Trade against the United States, the applicable statute must affirmatively and unambiguously grant right to trial by jury), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989); *Griffin v. United States Postal Service*, 635 F.Supp. 190 (N.D.Ga.1986) (striking plaintiff's jury demand because the Postal Reorganization Act did not expressly confer that right).

 Ms. Nyman argues that the FDIC's "sue and be sued" clause, 12 U.S.C. § 1819(a), is not only a broad waiver of sovereign immunity but also subjects the FDIC to trial by jury. The court cannot agree. "Through the 'sue and be sued' clause ... Congress effectively waived sovereign immunity for the [FDIC], but the waiver does not change the fact that the party being sued is still the federal government." *In Re Young*, 869 F.2d at 159. The FDIC is an agency of the United States. 12 U.S.C. § 1819(b)(1).[10] And, although "sue and be sued" clauses contained in statutes are broad waivers of immunity, "the waiver of sovereign immunity does not, by itself, grant a right to trial by jury in an action against the federal government." *In re Young*, 869 F.2d at 159; *see also KLK, Inc. v. U.S. Dept. of Interior*, 35 F.3d 454, 456 (9th Cir.1994).[11] Moreover, in

---

10. In *Young v. U.S. Postal Service*, 698 F.Supp. 1139 (S.D.N.Y.1988), the court found that "despite [the Postal Service's] autonomy in managing its own affairs, [it] remains a federal entity." *Id.* at 1141. Similarly, the FDIC is a federal entity. 12 U.S.C. Section 1819(b)(1), provides that, "the [FDIC], in any capacity, shall be an agency of the United States for purposes of section 1345 of Title 28, without regard to whether the [FDIC] commenced the action." 28 U.S.C. Title 1345, entitled "United States as plaintiff," in turn provides: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency officer thereof expressly authorized to sue by Act of Congress."

*See also Marcella v. Brandywine Hosp.*, 47 F.3d 618 (3d Cir.1995) (holding that since the Ameri-

can Red Cross was not an agency of the federal government, it was subject to jury trial); *Doe v. American Nat. Red Cross*, 847 F.Supp. 643 (W.D.Wis.1994) (holding that where a suit is not against the federal government itself, but rather a government instrumentality, such as the Red Cross, and the instrumentality operates under a "sue and be sued" clause, a plaintiff is entitled to a jury trial).

11. "Sue and be sued" clauses have subjected the federal government and its agencies to many types of liability, including prejudgment interest, liability for costs, and garnishment and attachment proceedings. *See Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988); *Reconstruction Finance Corp. v. J.G. Menihan Corp.*, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941), and *Federal Housing Admin. v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724

construing the conditions of the government waiver of immunity, courts may not extend the waiver "beyond that which Congress intended." *U.S. v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979). Furthermore, the Government's consent to a particular remedy must be unambiguous. *United States v. Nordic Village,* 503 U.S. 30, 37, 112 S.Ct. 1011, 1016, 117 L.Ed.2d 181 (1992); *see also Department of Army v. F.L.R.A.,* 56 F.3d 273, 277 (D.C.Cir. 1995) (internal citation omitted). A plaintiff therefore "has a right to trial by jury only where that right is one of 'the terms of [the Government's] consent to be sued.'" *Lehman,* 453 U.S. at 160, 101 S.Ct. at 2701.

Congress typically has conditioned any waiver of sovereign immunity on plaintiffs relinquishing any claim to a jury trial, and exceptions to such a condition may not be implied. *Lehman,* 453 U.S. at 161, 101 S.Ct. at 2701–02; *see also Doe v. Attorney Gen. of the United States,* 941 F.2d 780, 789 (9th Cir.1991) ("the courts have consistently refused ... to ignore a condition on a sovereign immunity waiver when the statute and legislative history either were silent or indicated congressional intent not to grant the right requested"). The Equal Pay Act does not expressly and unambiguously provide for such a right. *Walker v. Thomas, Chairman of the U.S. E.E.O.C.,* 678 F.Supp. 164, 165 (E.D.Mich.1987). There is also no indication of a congressional intent to grant such a right in the legislative history. *Id.* (citing 1974 U.S.Code Cong. and Admin. News 2811–2868; 120 Cong. Rec. 4688 (1974); 120 Cong. Rec. 7306 (1974)). Contrary to Ms. Nyman's contention a "sue and be sued" clause is not, in and of itself, an affirmative and unambiguous statement waiving immunity to trial by jury. *See In re Young,* 869 F.2d at 159; *see also Johnson v. Hospital of Medical College of Pa.,* 826 F.Supp. 942, 944

(E.D.Pa.1993). As a result, the court concludes that Congress did not in fact depart from its traditional practice of conditioning its waiver of sovereign immunity on plaintiff's relinquishing any claim to a jury. As such, Ms. Nyman was not entitled to a jury trial on her Equal Pay Act claim.[12] The jury's verdict is therefore only advisory. Nevertheless, in the court's view it was correct. Specifically, as to this claim the court makes the following findings of fact and conclusions of law pursuant to Rule 52.

### B. Equal Pay Act Claim

#### 1. Findings of Fact

1. Since January 1992, Ms. Nyman has served as Chief of the Call Reports Analysis Unit, GG–14, within the FDIC's Division of Supervision. In this capacity, Ms. Nyman has supervised 20 employees who are or have been at the grade of 11 or higher.

2. Ms. Nyman's unit is responsible for the collection and analysis, each calendar quarter, of financial statements of over 10,000 banks.

3. Within the Division of Supervision is an entity called the Registration and Disclosure Section. This section is headed by Mr. Lawrence Pierce, GG–15. In January 1992, Mr. Pierce supervised 4 individuals who were at the grade of 11 or higher.

4. Mr. Pierce's section is also responsible for collecting financial information from approximately 200 to 250 banks.

5. Ms. Nyman and Mr. Pierce are both responsible for insuring that the data collected by their respective entities is accurate before it is disseminated for use by the FDIC and before it is publicly disclosed.

6. Ms. Nyman and Mr. Pierce are both responsible for insuring that the banks they have jurisdiction over comply with all the

---

(1940). However, there is no reported case that holds that such a clause entitles a plaintiff to a trial by jury absent express congressional approval.

**12.** Ms. Nyman attempts to circumvent this result by arguing that since private actors are subject to jury trials in Equal Pay Act claims and the FDIC has a "sue and be sued" clause, the FDIC should be treated as though it were a private actor. A

"sue and be sued clause," however, does not in and of itself make the FDIC a private entity. *See Coley Properties Corp. v. United States,* 219 Ct.Cl. 227, 593 F.2d 380 (1979); *Young v. U.S. Postal Service,* 698 F.Supp. 1139, 1143 (S.D.N.Y.1988). Moreover, as the discussion above established, courts have not construed these clauses as providing for the right to a jury trial against the federal government absent an express congressional mandate.

rules and regulations that are applicable to the financial disclosures the banks are required to make.

7. Ms. Nyman and Mr. Pierce occupy the same job series—1160. Employees have transferred between their two respective entities.

8. Ms. Nyman's duties and responsibilities are equal to those of Mr. Pierce. More specifically, the evidence established that Ms. Nyman's position and Mr. Pierce's are substantially the same in terms of the skill, effort, and responsibility associated with each position.[13]

 a. *Skill:* In both positions, Ms. Nyman and Mr. Pierce are required to have the ability to organize and manage an operation that is responsible for collecting and analyzing financial data from banks. They are also required to be knowledgeable about banking and to be able to apply the rules that they are responsible for implementing. The rules that both Ms. Nyman and Mr. Pierce apply are substantially similar.

 b. *Effort:* Both Ms. Nyman and Mr. Pierce exert substantially the same effort in their respective capacities. They are both in office positions which require substantially the same physical and mental exertion.

 c. *Responsibility:* Both Ms. Nyman and Mr. Pierce have substantially the same responsibility associated with their respective positions. They are both responsible for collecting, in a time-sensitive manner, data from banks and analyzing such information. Both also have substantially the same responsibility for such management functions as hiring and evaluating, and monitoring the time, attendance and leave of subordinate staff.

9. There is no appreciable difference in the working conditions of the positions held by Ms. Nyman and Mr. Pierce.

10. Mr. Pierce, however, is paid more than Ms. Nyman. He is a GG–15 and earns more than $100,000 per annum. Ms. Nyman is a GG–14, which entitles her to a $91,000 per annum salary.

11. The evidence established that Ms. Nyman's position is substantially equal in the level of skill, effort, responsibility, and working conditions to that held by Mr. Pierce (who has a higher salary).[14] Under the Equal Pay Act, once a plaintiff makes this showing, the burden shifts to the defendant to plead and establish one of the four affirmative defenses provided for by the Act. *See* 29 U.S.C. § 206(d). One of the four defenses, and the one relied upon by the FDIC, is that the difference is based on a merit system. The FDIC, however, failed to prove this defense.

12. At trial. the FDIC contended that the difference in salary between Ms. Nyman and Mr. Pierce was due to an audit conducted by the U.S. Office of Personnel Management that established that Ms. Nyman's position was properly designated a level of GG–14.

13. The jury, in its advisory capacity, rejected this defense. The court does as well.

14. The audit only dealt with Ms. Nyman's unit. The audit did not encompass the positions of male section chiefs, such as Mr. Pierce. Accordingly, the audit could not establish that Ms. Nyman's position was not substantially the same as Mr. Pierce's because it did not have a credible basis for comparison.

15. In addition, the Office of Personnel Management was not provided with all the relevant information so as to enable it to make an accurate evaluation. For instance, Mr. Newport, Ms. Nyman's supervisor for over two years, was not interviewed. He was of the opinion that Ms. Nyman's position should be classified at a GG–15 level.

16. Under the Act, once a plaintiff establishes her *prima facie* case and the defendant fails to establish an affirmative defense, the trier of fact must determine whether or

---

**13.** Ms. Nyman had also established that her position is substantially the same as that occupied by Mr. Michael Dew. Mr. Dew, however, is a level GG–15.

**14.** Although it was legally sufficient for Ms. Nyman to make this showing with respect to only one male, she made a similar showing with respect to Mr. Dew.

not the defendant's action was a good faith decision based on a reasonable belief that it was complying with the law. *See* 29 U.S.C. § 260. The burden is on the defendant to establish its good faith.

17. The jury, in its advisory capacity, found that the FDIC's failure to pay Ms. Nyman the same amount as males performing substantially equal work was the product of bad faith. The court similarly concludes.

### 2. Conclusions of Law

1. To establish a *prima facie* violation of the Equal Pay Act, Ms. Nyman had to show by a preponderance of the evidence that she was discriminated against on the basis of sex in her pay. Particularly, she had to show that: (1) she was employed by the FDIC doing substantially equal work on a job, the performance of which required substantially equal skill, effort, and responsibility as jobs held by members of the opposite sex; (2) the job was performed under similar working conditions; and (3) she was paid at a lower wage than members of the opposite sex doing equal work. *See Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Schwartz v. Florida Board of Regents,* 807 F.2d 901 (11th Cir.1987); *Plemer v. Parsons–Gilbane,* 713 F.2d 1127 (5th Cir.1983).

2. Ms. Nyman, however, was only required to show that the work she performed was substantially equal to that of *one* male who was paid more. *Goodrich v. IBEW,* 815 F.2d 1519, 1524 (D.C.Cir.1987) (emphasis supplied).

3. Under the Act, the following terms have a given meaning:

a. *Equal* does not mean identical, but substantially equal. 29 C.F.R. § 1620.14(a) (1992); *Goodrich v. International Brotherhood of Electrical Workers., AFL–CIO,* 815 F.2d 1519, 1524 (D.C.Cir.1987); *Pearce v. Wichita County Hospital Board,* 590 F.2d 128 (5th Cir.1979). Positions can therefore be substantially equal even if there are insubstantial or minor differences in the degree or amount of skill, effort or responsibility required for the perfor-

mance of the job. 29 C.F.R. §§ 1620.14—1620.17; *Goodrich,* 815 F.2d at 1524.

b. *Skill* entails such factors as experience, training, education and ability. Moreover, in comparing two positions, only the skills actually required by the position are relevant. That is, the abilities of the persons in the positions are not relevant. 29 C.F.R. § 1620.15 (1992).

c. *Effort* means the physical or mental exertion needed to perform the job. 29 C.F.R. § 1620.16 (1992).

d. *Responsibility* is the degree of accountability required in the performance of the position. 29 C.F.R. § 1620.17 (1992).

e. *Working conditions* encompasses two factors: (1) "surroundings," which concern the nature and character of the environment in which the job is performed, including considerations of the elements to which the employee may be exposed; and (2) "hazards," which take into account physical hazards regularly encountered, their frequency, and the severity of the injury that they might cause. *Corning Glass Works,* 417 U.S. at 202, 94 S.Ct. at 2231–32, 29 C.F.R. § 1620.18.

4. Ms. Nyman has satisfied her burden. She has proven, by a preponderance of the evidence, that her position and that of Mr. Pierce are substantially equal with respect to the level of skill, effort and responsibility required by each position. She has further established that both positions are subject to similar working conditions.

5. Once a plaintiff makes this showing, she will prevail unless the defendant proves one of the four affirmative defenses provide for by the Act. That is, the burden shifts to the FDIC to affirmatively show by a preponderance of the evidence that the difference in pay was justified under one of the Act's four exceptions, which are affirmative defenses. The four exceptions are: (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production; or (4) a differential based on any other factor other than sex. 29

U.S.C.A. § 206(d)(1); *Corning Glass Works,* 417 U.S. at 196, 94 S.Ct. at 2229. The FDIC relied on the merit system defense at trial.

■■■ 6. To establish the existence of a merit system, the FDIC had to show that it employed an organized and structured procedure whereby Ms. Nyman was evaluated in a systematic manner according to predetermined criteria. *Maxwell,* 803 F.2d at 447; *E.E.O.C. v. Aetna Insurance Co.,* 616 F.2d 719, 725 (4th Cir.1980). Additionally, the FDIC had to establish a "means or order— 'system'—of advancement or reward for merit." *Maxwell,* 803 F.2d at 447 (quoting *Morgado v. Birmingham–Jefferson County Civil Defense Corps,* 706 F.2d 1184, 1188 (11th Cir.1983), *cert. denied,* 464 U.S. 1045, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984)).

7. The FDIC failed to prove this defense to the advisory jury and the court. Accordingly, the court will enter judgment for Ms. Nyman on her Equal Pay Act claim. She is therefore entitled to back pay. *See* 29 U.S.C. §§ 206(d)(3), 216(b).

8. In order to prevent the court from assessing liquidated damages against it, the FDIC had to prove that its decision was based on a good faith belief that it was obeying the law. *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 464–65 (D.C.Cir. 1976).

9. The FDIC failed to prove that its decision was based on a good faith belief that it was complying with the law.

10. The court thus concludes that Ms. Nyman is entitled to liquidated damages in an amount equal to the back pay that she is now entitled to.

### IV. Titled VII 1990 Sex Discrimination Claim

Ms. Nyman alleged at trial that the FDIC's decision not to promote her to Chief, Financial Reporting Section, grade 15, in January 1990, constituted discrimination based on her gender. The jury, in its advisory capacity, rejected this claim. The court similarly finds for the FDIC on this claim. Pursuant to Rule 52 the court issues the following findings of fact and conclusions of law.

### 1. Findings of Fact

1. In 1990, the position of Chief, Financial Reporting Section, grade 15, was posted by the FDIC for competition with a closing date of February 1, 1990.

2. At the time of the vacancy announcement, Ms. Nyman served as Chief of the Call Reports Analysis Unit, GG 14, in the Division of Accounting and Corporate Services.

3. Ms. Nyman and six other individuals, including five males, applied for the position.

4. Prior to the closing date, the FDIC canceled the selection process.

5. The position was filled by the lateral reassignment of Mr. William Dobrzykowski.

6. Mr. Dobrzykowski was previously an employee of the Federal Savings and Loan Insurance Corporation (FSLIC).

7. In the late 1980s. Congress enacted the Financial Institution Reform, Recovery, and Enforcement Act of 1989, Pub.L. 101–73, 103 Stat. 183 (FIRREA), to address the insolvency of hundreds of savings and loan institutions as well as that of the FSLIC deposit insurance fund.

8. As part of a regulatory overhaul, Congress terminated both the FSLIC and its parent, the Federal Home Loan Bank Board (FHLBB).

9. Congress directed that the employees of the FSLCI be absorbed by the FDIC, Office of Thrift Supervision or the Federal Housing Finance Board. *See* FIRREA Section 403(b), 103 Stat. 360–61. Individual employees of the terminated agencies were to be allocated among the FDIC and other agencies in "any manner" which the heads of those agencies, "in their sole discretion, deem[ed] equitable, except that, within work units, the agency preferences of individual employees [should] be accommodated as far as possible." Section 403(b)(2), 103 Stat. 361.

10. Former FSLIC and FHLBB employees were guaranteed a position with the "same status, tenure and pay as that held on the day immediately preceding the transfer." FIRREA Section 404(2), 103 Stat. 361.

11. Effective October 8, 1989, over eight hundred former FHLBB and FSLIC employees were transferred to the FDIC pursuant to Section 403 of FIRREA.

12. Mr. Dobrzykowski was among the transferred employees from the FSLIC.

13. Mr. Dobrzykowski was fully qualified for the lateral transfer into the GG 15 position at issue. He was therefore reassigned without competition.

## 2. Conclusions of Law

1. To establish a *prima facie* case of gender discrimination under Title VII, a plaintiff must show that: (1) she is a member of protected group; (2) she applied and was qualified for a promotion; (3) she was not selected; and (4) someone from outside the protected group was selected. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

2. Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. *Id.* at 254, 101 S.Ct. at 1094.

3. If the defendant is able to do so, the burden then shifts again to the plaintiff. That is, the plaintiff must then establish that the defendant's proffered reason was not the true reason for its employment decision; but rather, a pretext. *Id.* at 255–56, 101 S.Ct. at 1094–95; *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749–50, 125 L.Ed.2d 407 (1993).

4. Ms. Nyman successfully established a *prima facie* case of gender discrimination. She is a member of a protected ground, *i.e.,* she is a female; she was qualified for the position she applied for; she was not selected; and finally, someone from outside the protected group was selected, *i.e.,* a male.

5. The FDIC, however, articulated a legitimate nondiscriminatory reason for its employment decision. Namely, the FDIC

stated that pursuant to FIRREA it selected Mr. Dobrzykowski.

6. Ms. Nyman failed to prove, by a preponderance of the evidence, in the jury's, as well as the court's view, that the FDIC's reason was pretextual.

7. Accordingly, the court will enter judgment for the FDIC on this claim.

## V. Remedial Order

The jury has found the FDIC liable for retaliation in violation of Title VII. Although the issue of compensatory damages is left outstanding by this memorandum opinion and order until Ms. Nyman elects between accepting a remittitur or pursuing a new trial on the issue of damages, the court, in the interests of judicial economy, will enter a remedial order addressing all the other relief that Ms. Nyman is entitled to. The court will address the issues of interest, liquidated damages, leave, evaluations, the status of the Call Reports Analysis Unit, and attorneys' fees *seriatim.*

1. *Liquidated Damages:*

Consistent with the court's findings on Ms. Nyman's Equal Pay Act claim, she shall be awarded, as liquidated damages, a sum equal to that portion of the back pay award covering the period January 13, 1992 through the end of the back pay period.[15]

2. *Leave:*

The FDIC shall restore all the sick and annual leave that Ms. Nyman used from April 4, 1994 through May 31, 1995. The jury specifically found that the retaliation Ms. Nyman endured included a refusal to remove her from Mr. Hovan's chain of command. Since Ms. Nyman was forced to use sick and annual leave because of the effect Mr. Hovan's retaliation had on her health, such leave shall be restored. The FDIC shall also restore to Ms. Nyman's husband, Mr. William Birkes, the annual leave he donated to her during the period of time she was unable to work. In addition, the FDIC

---

**15.** January 13, 1992 was the first date on which Ms. Nyman and Mr. Pierce performed their jobs at different rates of compensation.

shall restore the annual leave Ms. Nyman was required to take in order to attend the trial in this matter.

3. *Evaluations:*

The performance evaluations prepared by Mr. Hovan shall be permanently removed from Ns. Nyman's official file. These evaluations shall not be used in connection with any FDIC matter.

4. *Status of Call Reports Analysis Unit:*

The Call Reports Analysis Unit shall be upgraded to a Section. Ms. Nyman will hereafter be entitled to use the title of "Section Chief." In addition, neither Ms. Nyman nor her Section shall be placed by the FDIC, either directly or indirectly, under Mr. Hovan's chain of command.

5. *Permanent Injunction Against Retaliation:*

The FDIC and its officers, employees and agents are permanently enjoined from retaliating against Ms. Nyman for engaging in activities protected by Title VII.

6. *Attorneys' Fees:*

Ms. Nyman shall be awarded reasonable attorneys' fees and expenses in connection with this lawsuit. The parties shall attempt to reach an accommodation on the appropriate amount. If the parties fail to reach an accord on this issue, counsel for Ms. Nyman shall file a motion for fees within 45 days of the date of this memorandum opinion and order. The FDIC shall file a response 15 calendar days thereafter. Counsel for Ms. Nyman shall file a reply 7 calendar days after that date.

7. *Implementation of Remedial Order:*

The parties shall attempt to agree on the manner of implementation of the remedial order. The parties are directed to submit a report to the court 45 calendar days from the date of this memorandum opinion and order regarding the status of the implementation of the remedial order.

## VI. Conclusion

For the foregoing reasons, it is this 7th day of February 1997,

**ORDERED** that the defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial be **denied;** and it is

**FURTHER ORDERED** that defendant's motion for a remittitur be **granted;** and it is

**ORDERED** that plaintiff advise the court and the defendant, by filing a written statement, of her decision to either accept a remittitur from $300,000 to $175,000 or, in the alternative, to pursue a new trial on the issue of damages. This notification shall be filed no later than 45 days from the date of this memorandum opinion and order; and it is

**ORDERED** that a finding for plaintiff on her Equal Pay Act claim be **entered;** and it is

**FURTHERED ORDERED** that a finding for the defendant on plaintiff's 1990 gender discrimination claim be **entered;** and it is

**ORDERED** that the remedial order attached to this memorandum opinion and order be **entered;** and it is ·

**FURTHER ORDERED** that this case be set for a status/settlement conference on *March 24, 1997 at 10:00 a.m.* Counsel, as well as the parties, are directed to appear at this conference: and it is

**ORDERED** that counsel for the parties meet and confer, in person, at least once prior to the status/settlement conference and discuss the prospects for settling this matter. Counsel will report to the court the result of the meeting(s) at the status/settlement conference.

**SO ORDERED.**

## Appendix

In *Carter v. Duncan–Huggins Ltd.,* 727 F.2d 1225, 1238 (D.C.Cir.1984), a Section 1981 case, the D.C. Circuit upheld a $10,000 award based on the fact that the plaintiff had suffered "seventeen months of incessant humiliation, harassment, and feelings of isolation." *Id.* at 1238. In *Hunter v. Allis–Chalmers*

*Corp., Engine Div.*, 797 F.2d 1417 (7th Cir. 1986), a Title VII discrimination and retaliation case, the court held that a $25,000 award for the humiliation and stress that plaintiff suffered as a result of the defendant's discriminatory and retaliatory actions was not "grossly excessive." *Id.* at 1425. The evidence established that the treatment to which the plaintiff was subjected to was indeed harsh. The evidence established that the defendants "would place a glue-like substance on the lock of his tool box, which prevented him from opening it; they hid his tools; they sabotaged the engines he was supposed to test. Racial graffiti blossomed on the walls of the bathroom and on a company bulletin, saying such things as, 'the KKK is not dead, nigger,' and 'open season on coons' ". . . "A hangman's noose covered with a black oily substance was found attached to a black worker's ... equipment." *Id.* at 1420. In *Hall v. Gus Const. Co., Inc.*, 842 F.2d 1010 (8th Cir.1988), a Title VII case, the plaintiffs were found to have been subjected to a hostile work environment and to have been constructively discharged. The women received damage awards of $15,000 and $20,000 for emotional distress. The court of appeals affirmed the award. The women were subjected to unseemly behavior. Agents of the defendant subjected the plaintiffs to verbal sexual abuse, offensive and unwelcomed physical touching, and the showing of pornographic materials. In addition, one defendant exposed himself to one of the plaintiffs. Another defendant urinated in one of the plaintiff's water bottles; another defendant urinated in one of the plaintiff's gas tanks; and some of the defendants observed the plaintiffs relieving themselves. In *U.S.E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276 (7th Cir.1995), a terminally ill plaintiff prevailed on his claim that as a result of his disability he was terminated. The court of appeals upheld a $50,000 award for emotional injuries. The court noted that the plaintiff was dying of cancer and must have suffered a great emotional burden because as a result of the defendant's actions, he was forced to watch his family suffer emotionally, as well as financially. *Id.* at 1286. In *Shea v. Icelandair*, 925 F.Supp.

1014 (S.D.N.Y.1996), the jury found that the plaintiff had been demoted as a result of his age and awarded him $250,000 in damages (not for loss in compensation), but for physical and emotional suffering. The district court ordered a remittitur of $75,000. The court noted that "the most important factor that sets this case apart ... is the fact that [defendant's] discriminatory conduct had physical consequences. *Id.* at 1021. The evidence established that the plaintiff had been subjected to a campaign to force his retirement. *Id.* at 1018. Following his demotion, the plaintiff's health deteriorated rapidly. *Id.* at 1019. Plaintiff required hospitalization for an angina attack; which his cardiologist linked to his stressful situation at work. *Id.* He was also diagnosed with Parkinson's disease. *Id.* at 1021. There was ample testimony establishing the relationship between stress and the aggravation of this disease. *Id.* at 1022. The plaintiff also presented substantial evidence concerning the humiliation and emotional trauma he sustained as a result of the defendant's actions. *Id.* Plaintiff stopped attending family gatherings and his relationship with his wife was strained. *Id.* at 1024. In *Littlefield v. McGuffey*, 954 F.2d 1337 (7th Cir.1992), the defendant was found liable for housing discrimination based on the race of plaintiff's boyfriend and their child (plaintiff was white. her boyfriend black). Defendant had agreed to rent to her. She and her family spent significant time painting and cleaning the apartment. When the landlord discovered her boyfriend was black, he refused to rent to her. He changed the locks and placed her belongings out on the porch. He called her at home and, "mimicking a stereotypical black manner of speaking, told her he wanted to move in with her and 'six black guys ... quit work and take welfare ... and drugs with [her] ... and swap wives with [her boyfriend].'" *Id.* at 1341. He called her sister, told her that he was member of the Ku Klux Klan, and asked her how her sister "could have [gone] to bed with a nigger and how she could ... have a nigger baby." *Id.* He left a note threatening the life of her boyfriend: "By THE time you read this message Kiss you Niger [sic] friend goodbye Bitch—he's dead!!!" *Id.* 1348.

The court of appeals upheld an award of $50,000. In *Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir.1985), a case brought under Title VII, Section 1981 and Section 1983, the district court found that the plaintiff had been intentionally discriminated against. The court awarded the plaintiff $100,000 in compensatory damages for humiliation and emotional distress. The court of appeals upheld the award based on evidence that the plaintiff "suffered emotional stress, loss of sleep, marital strain and humiliations because of violation of his civil rights." *Id.* at 1435. The court noted that the discrimination had persisted for a period of several years. *Id.* Plaintiff had been consistently denied administrative positions in favor of white persons frequently possessing inferior qualifications; defendants admitted that the plaintiffs race was a factor in their decisions; and defendants preselected white individuals for some of the positions plaintiff applied for. In *Lowery v. WMC–TV*, 658 F.Supp. 1240, 1266–67 (W.D.Tenn.1987), *vacated by settlement*, 661 F.Supp. 65 (W.D.Tenn.1987), after a bench trial, the court awarded plaintiff—a black television news anchor who was denied promotion and otherwise discriminated against—$100,000 in compensatory damages for embarrassment, humiliation and mental anguish. Plaintiff had been demoted (not fired) from his position. The award was based on evidence including "[t]he ultimate in humiliation ... when [plaintiff] was forced from his on-air responsibilities in the wake of his filing of his Title VII lawsuit. Such action shamed [plaintiff] before his coworkers and the community and had an obvious devastating effect upon him. Prior to this, [plaintiff] was continually humiliated and embarrassed by being passed over for promotion, being denied an employment contract, and being paid less than similarly situated white employees." *Id.* In *Wade v. Orange County Sheriff's Office*, 844 F.2d 951 (2d Cir.1988), the appeals court found the Title VII plaintiffs award of $50,000 in compensatory damages for emotional distress as not excessive. Plaintiff suffered repeated humiliation at work, defendants' racially motivated harassment included an unwarranted disciplinary sanction

based on the false testimony of one of the defendants. In *Block v. R.H. Macy & Co.*, 712 F.2d 1241, 1245 (8th Cir.1983), the Eighth Circuit upheld a $12,402 award "as the maximum which could be deemed reasonable" on evidence that as a result of discrimination, plaintiff "suffered sleeplessness, anxiety, embarrassment and depression." *Id.* In *Phillips v. Hunter Trails Community Association*, 685 F.2d 184, 190 (7th Cir.1982), a housing discrimination case, the court reduced a $25,000 award for humiliation and embarrassment to $10,000. In *Ramsey v. American Air Filter, Co., Inc.*, 772 F.2d 1303, 1313–14 (7th Cir.1985), a Section 1981 discrimination case, the court ordered that the defendant's motion for a new trial be granted unless the plaintiff accepted a remittitur reducing a $75,000 award to $35,000. In this case, "there was a paucity of references to any emotional harm that plaintiff suffered as a result of defendant's discrimination." *Id.* Plaintiff, however, provided detailed testimony as to the humiliation he suffered. *Id.* In *Moreno v. Consolidated Rail Corp.*, 909 F.Supp. 480 (E.D.Mich.1994), *aff'd*, 99 F.3d 782 (6th Cir.1996), a case brought pursuant to the Rehabilitation Act, the court upheld a jury award of $125,000. Plaintiff worked for the defendant for over 30 years and was terminated as a result of his disability. In *Secretary, Housing and Urban Development ex. rel. Herron v. Blackwell*, 908 F.2d 864 (11th Cir.1990), when the defendant found out that the prospective buyers were black, he refused to go ahead with the sale, and rented the property to a white couple. The court of appeals upheld the award of $40,000 for embarrassment, humiliation, and emotional distress as supported by sufficient evidence. Plaintiffs had testified about physical symptoms brought on by the emotional distress. In *Meyers v. City of Cincinnati*, 14 F.3d 1115 (6th Cir. 1994), plaintiff was awarded $25,000 for mental anguish, humiliation, and loss of reputation for his wrongful termination and the attendant publicity. He provided evidence indicating that he lost 10 pounds as a result of his emotional distress, he suffered from insomnia, and he suffered from stomach problems for which he was prescribed medication. In *Dickerson v. HBO & Co., et. al.*,

1995 WL 767193 (D.D.C.), a Title VII retaliation case, the court upheld a $100,000 jury award, although it fell in the "upper range of reasonableness." The court based its conclusion on the fact that plaintiff "testified as to the humiliation and emotional distress he felt because of his demotion and transfer to the midnight shift; he also explained how working the midnight shift severely impacted the time he ... spent with his children, and that his entire employment situation adversely affected his marital relationship." *Id.* In *Hetzel v. County of Prince William, et al.*, 89 F.3d 169 (4th Cir.1996), a case in which the defendant retaliated against the plaintiff as a result of the latter's exercise of her freedom of speech, the court found that an award of $500,000 for emotional distress was grossly excessive. The evidence that plaintiff presented consisted of plaintiff's "brief" and "conclusory" statements that she had headaches, stress, trouble reading to her daughter, and problems with her family as a result of the defendants' actions. *Id.* at 171. The court concluded that based on the evidence presented an award of $15,000 was appropriate. *Id.* at 173. In *Gierbolini Colon v. Aponte Roque*, 666 F.Supp. 334, 341 (D.Puerto Rico 1987), *aff'd*, 848 F.2d 331 (1st Cir. 1988), a Section 1983 violation of constitutional rights case, the court awarded the plaintiff $20,000 for the "indignities" of being "shuffled back to a subordinate position from the position of authority that he had worked hard to achieve" and being subordinated to a boss whose job the court believed plaintiff should have had. In *Hernandez v. Hill Country Telephone Co-op., Inc.*, 849 F.2d 139, 143–44 (5th Cir.1988), a Title VII and Section 1981 case, the court upheld a $5,000 damage award for mental anguish. Plaintiff was discriminatorily denied several positions. *Id.* The evidence established that he had undergone medical treatment as a result of his mental anguish. In *Wulf v. City of Wichita*, 883 F.2d 842, 874–75 (10th Cir.1989), the court held that a $250,000 award for emotional distress to a police officer following unlawful termination, which was supported only by the testimony of the plaintiff that he was stressed, angry, depressed and frustrated, and similar testimony from his wife, was

grossly excessive and remanded the case for recalculation of damages not to exceed $50,000. In *Spence v. Board of Education*, 806 F.2d 1198, 1200–01 (3d Cir.1986), a section 1983 case, the court affirmed the district court's remittitur of jury award from $25,000 to $2,940 for emotional distress where plaintiff testified that she was "depressed and humiliated" by a retaliatory transfer. In *Delli Santi v. CNA Insurance Companies*, 88 F.3d 192, 207 (3d Cir.1996), a case in which the jury found that the plaintiff had been retaliated against for complaining of age and sex discrimination, the court found that the district court's remittitur of a damage award for pain and suffering from $300,000 to $5,000 was entirely proper. In *Fitzgerald v. Mountain States Telephone and Telegraph Co.*, 68 F.3d 1257 (10th Cir.1995), a Section 1981 race discrimination case, the court found that a $250,000 award for emotional distress (given to each plaintiff) was excessive and ordered a new trial on damages.

*See also Binder v. Long Island Lighting Co.*, 847 F.Supp. 1007 (E.D.N.Y.1994) (in Title VII suit, court upheld $100,000 damage award for pain and suffering where the plaintiff was so distressed by his wrongful termination that he attempted suicide); *Arnold v. City of Seminole*, 614 F.Supp. 853 (N.D.Okla. 1985) (female police officer awarded $150,000 for severe emotional distress as evidence by post-traumatic stress syndrome and her inability to work arising from harassment that included vulgar comments. sexually graphic graffiti, and disparaging comments about women police officers); *Rowlett v. Anheuser–Busch, Inc.*, 832 F.2d 194 (1st Cir.1987) (award of $123,000 in racial discrimination case was not grossly excessive, where plaintiff was subjected to several years of discrimination and a significant period of unemployment); *Fernot v. Crafts, Inn, Inc.*, 895 F.Supp. 668 (D.Vt.1995) ($48,000 awarded for severe emotional distress with physical manifestations where plaintiff subjected to sexual comments, unwanted physical contact, and termination); *Luciano v. Olsten Corp.*, 912 F.Supp. 663 (E.D.N.Y.1996) (upholding an $11,400 damage award for emotional distress where the plaintiff was discriminatorily terminated because of her gender); *Boyce v.*

*Board of County Commissioners of Dickinson County,* 857 F.Supp. 794 (D. Kansas 1994) (employee was retaliated against for engaging in protected activity and was awarded $50,000, although disagreeing with the amount of the award. the court nevertheless upheld it); *Borja–Fierro v. Girozentrale Vienna Bank,* 1994 WL 240360 (S.D.N.Y.) (after the plaintiff was awarded $160,000 because he was dismissed in retaliation for his discrimination complaints, the district court granted a remittitur to $15,000); *McIntosh v. Irving Trust Co.,* 887 F.Supp. 662 (S.D.N.Y. 1995) (in retaliation case, plaintiff was awarded $219,428 in compensatory damages for pain, suffering, humiliation, mental anguish and emotional distress, the court conditioned the granting of a new trial on plaintiffs acceptance of a remittitur to $20,000); *Lightfoot v. Union Carbide Corp.,* 901 F.Supp. 166 (S.D.N.Y.1995) (in a case where the employee was awarded $750,000 in compensatory damages on his New York state age discrimination claim, the court remitted the award to $75,000); *Rush v. Scott Specialty Gases, Inc.,* 930 F.Supp. 194 (E.D.Pa.1996) (in discrimination case, jury awarded the plaintiff $1,000,000 in compensatory damages after plaintiff had proven that she had sustained substantial emotion distress for over four years and the district court ordered a remittitur to $100,000); *Hurley v. Atlantic City Police Dept.,* 933 F.Supp. 396 (D.N.J.1996) (remitting award from $500,000 to $175,000 in sexual harassment case where plaintiff demonstrated "serious harm" which resulted in plaintiff leaving work on stress leave for a year); *Dombeck v. Milwaukee Valve,* 823 F.Supp. 1475 (W.D.Wis.1993), *vacated on other grounds,* 40 F.3d 230 (7th Cir.1994) ($25,000 awarded for anxiety disorder caused by sexual harassment and improper touching); *Cygnar v. City of Chicago,* 865 F.2d 827 (7th Cir.1989) (remittitur from $55,000 to $15,000 appropriate for emotional distress damages in discrimination case); *Fitzgerald v. Mountain States Telephone and Telegraph Co.,* 68 F.3d 1257, 1265 (10th Cir.1995) (jury verdict of $250,000 for emotional distress damages found clearly excessive in sex discrimination case).